UNITED STATES, Appellee

v

JULIO L. ORTIZ, Private, U. S. Marine Corps, Appellant

16 USCMA 127, 36 CMR 283

No. 18,595

March 18, 1966

Major Brian B. Kent, USMC, argued the cause for Appellant, Accused.
Rear Admiral Robert H. Hare, USN, argued the cause for Appellee, United States. With him on the brief were Captain James A. Potter, USN, and Lieutenant Colonel Daniel F. McConnell, USMC.
Rear Admiral Wilfred Hearn, USN, argued amicus curiae.

## Opinion of the Court

FERGUSON, Judge:

The United States seeks reconsideration of our decision in this case, the original opinion in which may be found at 15 USCMA 505, 36 CMR 3. There, we held the Commanding Officer, 2d Bridge Company, Force Troops, Fleet Marine Force, Atlantic, did not possess the inherent authority under Uniform Code of Military Justice, Article 23, 10 USC § 823, to appoint a special court-martial, nor had the Secretary of the Navy authorized him, either specifically or generically, to do so, although we expressly noted we did not doubt the Secretarial authority so to act, if, in his judgment, such was required.

The Government does not now contend we erred in concluding the 2d Bridge Company was not a ▬▬▬ unit of a type specifically within the ambit of Code, supra, Article 23, more particularly Code, supra, 23(a)(6), which confers

**127**

appointing authority upon "the commanding officer of any separate or detached command or group of detached units . . . placed under a single commander for this purpose." Nevertheless, we have reexamined the issue and are satisfied our original determination was correct. We unanimously adhere to that conclusion.

The second question originally before us, and now again presented by the petition for reconsideration, is whether the Secretary of the Navy has empowered the Commanding Officer, 2d Bridge Company, to convene special courts-martial, pursuant to his undoubted authority so to act with respect to "the commanding officer . . . of any other command," as set forth in Code, supra, Article 23 (a) (7).

The Government originally relied upon Article 1401.3, U. S. Navy Regulations, 1948, and section 0103b(5) of the Navy JAG Manual, promulgated as a directive by the Secretary of the Navy. We rejected the Government's contention in our original opinion, and declared it might be "swiftly handled." We nevertheless gave the matter serious consideration, deeming reiteration of applicable concepts to which we had previously devoted several pages unnecessary to convey the premises underlying our finding that the regulations involved did not include a separate company in the Marine Corps.

It is now urged upon us that our interpretation was wrong and that, in intention and language, the Secretary has positively empowered the Commanding Officer of a separate company in the Marine Corps, when so designated by a general officer in command, to convene special courts-martial. Nothing new is presented to support the contention we erred, and the arguments are largely appeals to expediency, based upon the allegation that our original decision, broadly read, will result in the nullification of seven to ten thousand special courts-martial. Cf. Rosborough v Russell, 150 F2d 809, 816 (CA1st Cir) (1945).

The extent of the effect of a ruling of any court on completed criminal prosecutions has relevance in determining whether it should operate prospectively or be given retrospective effect. See Linkletter v Walker, 381 US 618, 14 L ed 2d 601, 85 S Ct 1731 (1965), and Tehan v Shott, 382 US 406, 15 L ed 2d 453, 86 S Ct — (1966). It has no significance, however, with reference to cases, as this one, "still pending on direct review." Linkletter v Walker, supra, at page 622; Tehan v Shott, supra. Hence, I find it unnecessary to express my opinion regarding the extent of our decision herein until a case in which action has been finally completed is presented to us. Chief Judge Quinn, however, is of the view that our interpretation of the regulations in question should be applied in this case and henceforth only, in accordance with the considerations laid down by the Supreme Court in Linkletter v Walker and Tehan v Shott, both supra.

In any event, we believe the Government reads our original opinion far too broadly and extends it application to commands and units never intended to come within its purview. As we there said, we here repeat: We deal only with the issue whether the 2d Bridge Company is a separate and detached command within the meaning of the statute and regulations. It is unwise to generalize from the application of a jurisdictional concept involving a particular type of unit that other types of commands likewise lack the requisite appointing power. Differences in size, type, organization, mission and many other factors which cannot now be foreseen may lead to entirely different conclusions concerning the existence of appointing authority under Code, supra, Article 23, or Secretarial regulations promulgated pursuant thereto.

Expanding, then, upon our original opinion concerning the existence of appointing authority under section 0103b(5) of the Navy JAG Manual, supra, we reiterate our declaration that it appears "designed to implement those provisions of Code, supra, Article 23, which give the appointing power to the commanders of appro-

priately designated separate commands," and into which classification separate companies do not fall. United States v Ortiz, supra, at page 510. Thus, it provides pertinently as follows:

"b. *Special courts-martial.—In addition to those officers otherwise authorized by article 23 of the Code,* the following officers are, pursuant to article 23 (a) (7) of the Code, hereby designated as empowered to convene special courts-martial:.

• • • • •

"(5) All commanding officers and officers in charge of commands now or hereafter *designated as separate or detached commands within the meaning of article 23 of the Code by a flag or general officer in command* (including the commander of a multiservice command to which members of the naval service are attached)." [Emphasis supplied.]

The quoted provision had its origin in the Naval Supplements to the Manual for Courts-Martial, United States, 1951, and former SECNAV Instructions. All these antecedents establish that the JAG Manual provision was intended to apply, as it states, only to separate or detached commands "within the meaning of article 23." The language of the 1955 Naval Supplement, supra, best reflects the limitation:

"a. In addition to those officers authorized by Articles 22, 23, and 24, UCMJ, to convene general, special and summary courts-martial, other officers specifically designated by the Secretary of the Navy as having authority to convene certain courts-martial are listed in SecNav Instruction 5810.4 and revision thereto.

"b. Separate and detached commands.—*The commanding officer or any organization designated a separate or detached command as provided by Article 1401.3, U. S. Navy Regulations, 1948* [which requires that the designation of an organization as separate or detached within the meaning of Article 23 be set out in writing and that The Judge Ad-

vocate General of the Navy and the Commandant of the Marine Corps be informed as to the action taken], and paragraph 5b(3), MCM, 1951, or the commander of a group of detached units placed under his command for the purpose of authority to convene special courts-martial, *is authorized by Article 23(a)(6), UCMJ, to convene special courts-martial.* A copy of the orders designating an organization a separate or detached command or placing a group of detached units under a single commander for disciplinary purposes shall be forwarded to the Judge Advocate General. Marine Corps units will, in addition, forward a copy of such orders to the Commandant of the Marine Corps." [Section 0102a, b, pages 4–4a.] [Emphasis supplied.]

SECNAV Instruction 5810.4B, July 14, 1960, to which reference was expressly made by the Commanding General, Force Troops, Fleet Marine Force, Atlantic, in designating the 2d Bridge Company as "a separate and detached command" within the meaning of Code, supra, Article 23, states:

"Pursuant to article 23(a)(7) of reference (a), the following officers, *some of whom may be considered to have statutory authority under article 23 of reference (a)*, are hereby empowered to convene special courts-martial:

• • • • •

"All commanding officers and officers in charge of commands now or hereafter designated *as separate or detached commands within the meaning of article 23 of reference (a) by a flag or general officer in command.*" [Emphasis supplied.]

The quoted SECNAV Instruction was in fact superseded by SECNAV Instruction 5810.4C, January 9, 1962, which listed a number of officers as specially empowered to convene special courts-martial, and none of which are involved here. Nevertheless, as a scrutiny of SECNAV Instruction 5810-.4B will indicate, its language was carried forward into section 0103b(5) of the JAG Manual, supra, with which

we are now concerned. A natural reading of these various directives, effective in the past and ▬▬▬ now promulgated in the JAG Manual, leads inevitably to the conclusion that it was the Secretarial purpose thereby to cover only those separate and detached commands which come within the scope of Code, supra, Article 23(a)(6), the terms of which we have before unanimously stated do not embrace a separate company. Hence, we necessarily must conclude the assumption by the Commanding General, Force Troops, Fleet Marine Force, Atlantic, that the 2d Bridge Company was a unit capable of receiving such authority under Code, supra, Article 23(a)(6), when so designated by him under the JAG Manual section, was erroneous, and could not operate to authorize its commander to convene special courts-martial.

It has been suggested that, as SECNAV Instruction 5810.4B, supra, noted expressly some of the listed commands might already "be considered to have statutory authority under article 23," and as section 0103b of the JAG Manual, supra, states its grants of authority are *In addition to* those officers otherwise authorized by article 23 of the Code" (emphasis supplied), there is an important change in its terms to which we give no effect, thereby charging the Secretary with the performance of a useless act. There are a number of answers to that argument.

First, as has been noted, the same language regarding "separate or detached commands *within the meaning of article 23*" (emphasis supplied) is used in both items. In the Instruction, its inclusion is easily explicable, for that directive expressly recognized that some of the categories of units therein listed already possessed statutory authority to convene courts-martial. It was made doubly apparent "separate and detached commands" were intended to be of the nature included within Article 23(a)(6), by addition of the language "within the meaning of article 23." That identical phraseology was carried over

to the JAG Manual subsection. True, the opening language was changed to "In addition to," etc., but we are yet left with the undeniably express qualification that all such separate and detached commands must likewise meet the test of Code, supra, Article 23.

It is our duty, if possible, to give effect "'to every provision . . . [of the regulation] so that no part will be inoperative, superfluous, void or ineffective,'" United States v Lucas, 1 USCMA 19, 22, 1 CMR 19, 22; *Ortiz*, supra, at page 508. The Secretary has clearly stated he wishes only those separate and detached commands within the meaning of Article 23 to exercise special court-martial jurisdiction, when parted from larger, homogeneous units by the order of a general or flag officer. He perhaps wished such jurisdiction limited to these larger sized units, as only they would possess the officers and other personnel necessary to convene a special court-martial. Certainly, we cannot impute to the Secretary—in face of the regulation's language—an intention for a company commander to convene special courts-martial as a separate and detached unit, when he cannot muster sufficient officers from his rolls to man such a court! And when the Secretary declared that he wished jurisdiction so limited, it is to his judgment we must defer and not our own or that of The Judge Advocate General. See United States v Smith, 13 USCMA 105, 32 CMR 105.

Moreover, the regulation does not merely reiterate a classification of commands set forth in the statute, thus being no more than a sterile repetition of a jurisdictional situation already embodied in our organic act. It applies only when a command within the meaning of Code, supra, Article 23 (a)(6), has been designated as separate or detached by the general or flag officer in command. JAG Manual, supra, section 0103b(5).

The Manual for Courts-Martial, United States, 1951, recognizes that uncertainty may exist as to whether a command is separate or detached

within the meaning of Code, supra, Article 23. It proposes the doubt be resolved by referring the matter to the general or flag officer who exercised ultimate responsibility for it. Manual for Courts-Martial, supra, paragraph 5b(3). The Secretarial regulation removes the occasion for doubt and the need for a *post hoc* reference by providing for an initial determination of separation.

As we have said, we must construe the provision of the Navy JAG Manual before us in a manner calculated to give effect to all its several parts. Counsel for the Government and our dissenting brother would ignore the express limitation therein, to wit: "within the meaning of article 23," and give ear only to the opening language thereof. We cannot accept that construction. United States v Lucas, supra. The provision must be read as a whole and, so construed, it requires the conclusion a separate or detached command must be one within the meaning of Code, supra, Article 23, and designated as such by the general or flag officer in command, before its commanding officer or officer in charge, under the JAG Manual, supra, may appoint special courts-martial.

In summary, as we said before, we have no reservations about the broad powers of the Secretary of the Navy, under Code, supra, Article 23(a)(7), to empower commanding officers, such as that of the 2d Bridge Company, to convene special courts-martial. In the regulations before us, he has not done so. In consequence, we adhere to our original opinion and reaffirm our previous decision in the case.

The petition for reconsideration is denied.

Chief Judge QUINN concurs.

KILDAY, Judge (dissenting):

I dissent.

This case is now before us on the petition of the Government for reconsideration. On October 29, 1965, after briefs and argument, we rendered our decision herein. United States v Ortiz, 15 USCMA 505, 36 CMR

3. Subsequent thereto the Government filed the instant petition. The Judge Advocate General of the Navy, on behalf of the Secretary of the Navy, moved that he be given permission to enter the case as *amicus curiae* and to file a brief in support of granting the reconsideration prayed. By order, we granted such motion and directed that a brief might be filed. Briefs were filed by the Government, appellant, and *amicus curiae*. Arguments have been heard by both parties and the *amicus curiae*.

Appellant was tried by a special court-martial convened by the Commanding Officer, 2d Bridge Company, Force Troops, Fleet Marine Force, Atlantic, Camp Lejeune, North Carolina, on several specifications, to some of which he entered a plea of guilty and as to others not guilty. He was convicted of all the specifications. He was sentenced to confinement at hard labor for four months, forfeitures, and a bad-conduct discharge. The convening authority approved the sentence. The officer exercising general court-martial jurisdiction reduced the forfeitures, approved the confinement and approved the bad-conduct discharge, but suspended execution of the discharge for the period of confinement and six months thereafter. Subsequently, all unexecuted confinement and forfeitures were remitted by the Commanding General, Force Troops. A board of review in the office of The Judge Advocate General of the Navy affirmed the findings of guilty and sentence as approved on review below.

This Court granted review on the single issue:

"Whether the Convening Authority was authorized to convene special courts-martial under Article 23 of the Uniform Code."

After briefs and argument on that issue, we rendered our decision hereinbefore mentioned.

Upon the original submission of this case, Government counsel placed primary reliance on subparagraphs (5) and (6) of Article 23(a), Uniform Code of Military Justice, 10 USC § 823.

The brief first mentioned the possible application of subparagraph (7) thereof in the following statement:

". . . Furthermore the Appellee suggests that although the provisions of Article 23(a) 7 are not necessarily involved in the case at bar that there is authority in the law for the appointment of the court under this provision also."

In a similarly summary fashion, our opinion of more than four pages disposed of the possible application of Article 23(a)(7), supra, in a single paragraph which begins, "The Government's final argument may be swiftly handled."

In marked contrast, the brief by Government counsel in support of the petition for reconsideration relies solely and entirely on the provisions of Article 23(a)(7), rather than Article 23(a)(5) and 23(a)(6) of the Code. In support of the present petition for reconsideration, Government counsel formulate and submit the following argument:

"I. THE SECRETARY OF THE NAVY, WITH FULL AND SPECIFIC INTENT TO DO SO, DID IN FACT DESIGNATE AS EMPOWERED TO CONVENE SPECIAL COURTS-MARTIAL VARIOUS CATEGORIES OF COMMANDING OFFICERS, ONE OF WHICH INCLUDED THE COMMANDING OFFICER, 2D BRIDGE COMPANY, THIS DESIGNATION BY EXPRESSED AND SPECIFIC REFERENCE INVOKED THE AUTHORITY GRANTED THE SECRETARY OF THE NAVY BY ARTICLE 23(a)(7) OF THE CODE.

"II. THE DESIGNATION BY THE SECRETARY OF THE NAVY OF VARIOUS CATEGORIES OF COMMANDING OFFICERS EMPOWERED TO CONVENE SPECIAL COURTS-MARTIAL WAS A LAWFUL, VALID AND EFFECTIVE EXERCISE OF THE AUTHORITY GRANTED HIM BY ARTICLE 23 (a)(7) OF THE CODE.

A. NEITHER THE LANGUAGE OF ARTICLE 23, ITS LEGISLATIVE HISTORY, NOR ANY OTHER PROVISION OF LAW SUGGESTS AN EXPRESS OR IMPLIED LIMITATION ON THE AUTHORITY SO GRANTED OR THE MANNER IN WHICH IT MAY BE EXERCISED.

B. THE ACTION OF OTHER INDIVIDUALS (IN CREATING OR DESIGNATING SEPARATE OR DETACHED COMMANDS WITHIN THE CATEGORY ESTABLISHED BY THE SECRETARY) IS IN NO SENSE A DELEGATION OF THE SECRETARY'S DISCRETION UNDER THE ARTICLE BUT MERELY A DETERMINATION OF A CONDITION UPON THE OCCURRENCE OF WHICH THE SECRETARY'S DESIGNATION APPLIES.

"III. THE COMMANDING GENERAL, FORCE TROOPS, FMFLANT LETTER (DESPITE INARTFUL DRAFTSMANSHIP) EFFECTIVELY DESIGNATED THE 2D BRIDGE COMPANY A SEPARATE AND DETACHED COMMAND. THE COMMANDING OFFICER THEREOF WAS THEREFORE CLEARLY AND DEFINITELY WITHIN A CATEGORY DESIGNATED BY THE SECRETARY AND THE CONVENING OF THE SPECIAL COURT-MARTIAL WAS A PROPER EXERCISE OF A LAWFUL AND VALID POWER LAWFULLY AND EFFECTIVELY CONFERRED."

In addition, Government counsel now call to our attention various actions by the Secretary of the Navy in implementation of Article 23, Uniform Code of Military Justice, supra, and specifically Article 23(a)(7). This Court will take judicial notice of such directives and regulations of the Secretary in the implementation of Article 23(a)(7), which authorizes special courts-martial to be convened by:

". . . the commanding officer or officer in charge of any other command when empowered by the Secretary concerned."

See paragraph 147a, Manual for Courts-Martial, United States, 1951; United States v Taylor, 2 USCMA 389, 9 CMR 19.

Such regulations when adopted in accordance with Congressional authorization, as is the case under Article 23(a)(7), have the force of law. United States v Smith, 13 USCMA 105, 32 CMR 105. Notwithstanding, and in view of the voluminous character of departmental regulations, it would appear that this Court is not asking nor expecting too much in suggesting that the Government, when relying upon such a regulation, fully develop its

contention, particularly in a case to which, as here, they attach such importance.[1] Had this been done in the instant case, the present difficulty might have been avoided.

In its former opinion, this Court considered, in detail, the proper construction of Article 23(a)(5), and Article 23(a)(6), and determined that under those provisions the Commanding Officer of the 2d Bridge Company would not have authority to convene special courts-martial. That conclusion is correct and, as the majority point out, we all adhere to the same. The area as to which I part company with my brothers is the application of Article 23(a)(7).

I now consider the case in the context of the expanded arguments presently submitted by Government counsel and the *amicus curiae*, in the light of the regulations promulgated by the Secretary of the Navy in the implementation of Article 23(a)(7).

At all times here involved the controlling regulation of the Secretary of the Navy appeared in section 0103b of the Manual of the Judge Advocate General, reading:

"*Special courts-martial.*—In addition to those officers otherwise authorized by article 23 of the Code, the following officers are, pursuant to article 23(a)(7) of the Code, hereby designated as empowered to convene special courts-martial:

. . . . .

"(5) All commanding officers and officers in charge of commands now or hereafter designated as separate or detached commands within the meaning of article 23 of the Code by a flag or general officer in command (including the commander of a multiservice command to which members of the naval service are attached)."

This provision of The Judge Advocate General's Manual was issued over the signature of the Secretary of the Navy.

It also appears that, at various times prior to the promulgation of the regulation herein immediately preceding, the Secretary of the Navy had issued a number of regulations under Article 23(a)(7), which were amended or superseded. The immediate precursor of this regulation had contained some sixty-five commands by specific designations thereof. The purpose of the current regulation was to cancel those specific designations and to create a category of separate or detached commands and defining them as "designated as separate or detached commands . . . by a flag or general officer in command."

That the Secretary of the Navy intended to, and did, bestow special court-martial authority on separate or detached commands designated by a flag or general officer in command, seems manifest. And such is true notwithstanding the inclusion in The Judge Advocate General's Manual provision of the language "within the meaning of article 23 of the Code." The regulation, it is to be noted, begins with the statement:

"*In addition to those officers otherwise authorized by article 23 of the Code,* the following officers are, pursuant to article 23(a)(7) of the Code, hereby designated as empowered to convene special courts-martial. . . ." [Emphasis supplied.]

It is evident the Secretary was bestowing special court-martial authority on officers in addition to those "otherwise authorized by article 23 of the Code." Additionally, it should be borne in mind that no such regulation would be necessary to confer special court-martial authority on officers already having such by reason of

---

[1] In fairness, it should be noted that the Government's brief, on the original petition for grant of review, did go on to outline, as an alternative approach, the application of departmental regulations in vesting special court-martial jurisdiction in the case at bar under Article 23(a)(7). In any event, however, the matter was presented with such emphasis on subparagraphs (5) and (6), that this Court gave primary attention to them rather than the application of the regulations under subparagraph (7).

other provisions of Article 23. We should not assume that the Secretary of the Navy was engaging in a futile or useless action when he issued so formal a matter as a regulation. If such were true, Article 23(a)(7) of the Code would be meaningless. And, indeed—as is noted hereinafter—the Secretary of the Navy, both under the Code as well as prior thereto under the same statutory authority, has vested court-martial authority under Article 23(a)(7), and its precursors, in commanders in addition to those otherwise so empowered by other portions of the applicable statute.

That the 2d Bridge Company came within the category created by the Secretary of the Navy in section 0103b(5) of The Judge Advocate General's Manual, is clear by the letter of the Commanding General, Force Troops, which reads as follows:

"From: Commanding General

"To: Commanding Officer, 2d Bridge Company, Force Troops, Fleet, Marine Force, Atlantic, Camp Lejeune, North Carolina

"Subj: Authority to convene courts-martial

"Ref: (a) Art 1401.3, U. S. Navy Regulations, 1948
(b) JAG Manual sec. 0103b(5)
(c) SECNAVINST 5810.4B
(d) Arts 23 and 24, UCMJ
(e) Par 5b(3), MCM, 1951

"1. Pursuant to the authority of references (a), (b), and (c), 2d Bridge Company, Force Troops, Fleet Marine Force, Atlantic, is hereby designated a separate and detached command within the meaning of references (d) and (e). This designation shall continue until revoked by competent authority. Accordingly, the commanding officer is authorized to convene summary and special courts-martial and exercise the powers incidental to this authority as provided by law and regulation."

That this letter is an unequivocal designation of the 2d Bridge Company as a separate or detached command is not open to argument. Nor can the letter be construed as an attempt by the Commanding General, Force Troops, to confer special court-martial jurisdiction. Jurisdiction could be conferred only by action of the Secretary of the Navy and that he had done by the quoted provisions of The Judge Advocate General's Manual. The correct construction of the letter is that, by reason of his designation of the company as a separate or detached command, automatically it fell within the category already established and vested with special court-martial authority by the Secretary of the Navy, for it begins, "Accordingly."

For another and stronger reason it was advisable or necessary to include the recitation of authorization to convene summary and special courts-martial. Paragraph 5b(4), Manual for Courts-Martial, United States, 1951, reads:

"A subordinate commander may exercise his power to appoint special courts-martial unless a competent superior reserves that power to himself and so notifies the subordinate."

Additionally, the Secretary of the Navy's Instruction 5810.4C, dated January 9, 1962, had called attention to this provision of the Manual in the following paragraph:

"5. *Summary Courts-Martial Convening Authorities.* No provision is made in this Instruction for specific grants of authority to convene summary courts-martial since that authority flows from the authority to convene special courts-martial. However, in accordance with the provisions of subparagraphs 5b(4) and 5c, MCM 1951, the exercise of authority to convene special courts-martial may be restricted by a competent superior commander. Accordingly, any authority to convene, as generally or specifically granted by this Instruction, or otherwise, may be wholly or partially restricted by such superior commander."

It was therefore desirable that the Commanding General indicate that the authority to convene special courts-martial was not reserved to himself or otherwise restricted.

I am aware of nothing which would militate against the validity of the Commanding General's designation of the 2d Bridge Company as a separate or detached command, even though it be conceded, *arguendo*, that the Commanding General sought to exercise the power, which he did not possess, to himself confer court-martial jurisdiction.

Prior to the adoption of the Uniform Code of Military Justice, the Navy did not have courts-martial denominated "special courts-martial." The equivalent thereof were denominated "summary courts-martial." The power to convene such summary courts-martial was controlled by Article 26, Articles for the Government of the Navy, as amended by the Act of August 29, 1916 (R. S., section 1624, Article 26, chapter 417, 39 Stat 586). That Article reads as follows:

> "*Convening authority.*—Summary courts martial may be ordered upon petty officers and enlisted men in the naval service under his command by the commanding officer of any vessel, the commandant of any navy yard or naval station, the commanding officer of any brigade, regiment, or separate or detached battalion, *or other separate or detached command*, or marine barracks, *and, when empowered by the Secretary of the Navy, by the commanding officer or officer in charge of any command not specifically mentioned in the foregoing*, for the trial of offenses which such commanding officer or commandant may deem deserving of greater punishment than he is authorized to inflict, but not sufficient to require trial by a general court martial." [Emphasis supplied.]

It is evident that the above emphasized portion of Article 26 effectively includes the substance of Article 23 (a) (6), and Article 23 (a) (7), Uniform Code of Military Justice, supra. The last-mentioned provisions, respectively, authorize the convening of special courts-martial by:

> "(6) the commanding officer of any separate or detached command or group of detached units of any of the armed forces placed under a single commander for this purpose; or

> "(7) the commanding officer or officer in charge of any other command when empowered by the Secretary concerned."

The legislative history of the Uniform Code of Military Justice shows that Congress fully understood that these portions of Article 23 were re-enactments of previously existing law.

At page 1137 of the hearings before the Subcommittee of the House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, 1949, regarding the Uniform Code of Military Justice, it is made evident that the Subcommittee was considering the bill by reading it section by section. In that connection Mr. Robert Smart, Chief Counsel of the Committee on Armed Services, was reading each section and a commentary and supplementing the same by his own remarks, in some of which colloquies Mr. Felix Larkin, Assistant General Counsel, Office of the Secretary of Defense, participated. At page 1137 it is shown that Mr. Smart read the language of Article 23 and immediately thereafter stated the following:

> "References: A. W. 9, A. G. N., article 26.

> "Commentary: This article is derived from A. W. 9. Provisions for all the armed forces have been added. An 'officer in charge' is an officer of the naval service or Coast Guard who is not known by the title of 'commanding officer' but exercises similar authority. Subdivision (b) conforms to article 22.

> "Mr. BROOKS [Chairman of the Subcommittee]. You have heard the article. Are there any questions on it? Any changes suggested? If not—

> "Mr. SMART. It is a restatement of existing law, Mr. Chairman.

> "Mr. BROOKS. Yes.

> "Mr. Rivers. Do you want anything for the record?

"Mr. SMART. That is all that needs to be, sir.

"Mr. BROOKS. Yes. It is just the same law restated there.

"Mr. LARKIN. Yes, sir.

"Mr. BROOKS. If there are no objections, then, it stands adopted as read." [Hearings before the House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, page 1137.]

There can be no question that the Subcommittee was fully informed that Article 23 constituted a consolidation of Article of War 9 and Article 26 of the Articles for the Government of the Navy. Being so informed it adopted Article 23 as a re-enactment of Article of War 9 and Articles for the Government of the Navy, Article 26.

That the House of Representatives was informed that Article 23 constituted a re-enactment of Article of War 9 and Articles for the Government of the Navy, Article 26, is made clear by the report of the Committee on Armed Services accompanying the bill enacting the Uniform Code of Military Justice, Report No. 491, 81st Congress, 1st Session, at page 17, which contains the substance of the above quoted "Commentary" and the exact words, "References: A. W. 9, A. G. N., article 26." That the Senate was similarly informed appears from Senate Report No. 486, 81st Congress, 1st Session, entitled "Establishing a Uniform Code of Military Justice," page 14, where the exact "Commentary" and "References" quoted above appear.

When Congress re-enacts a previously existing law and that law has been construed by the Executive Department bearing the burden of its administration, such re-enactment "constitutes a recognition and ratification of prior interpretation." United States v Davis, 12 USCMA 576, 31 CMR 162.

In connection with the petition for reconsideration, the *amicus curiae* points out that during a period of forty-nine years, beginning with the amendment of Articles for the Government of the Navy, Article 26, in 1916, the Secretary of the Navy exercised the authority on many occasions by names of organizations and by category. This Court is now furnished five instances prior to the enactment of the Code and six instances subsequent thereto, including the current designation of separate and detached commands by flag or general officer.

This information was not called to our attention upon original submission. The importance therefore cannot be overlooked. This Court recently had occasion to consider a closely related question in United States v Scheunemann, 14 USCMA 479, 34 CMR 259. In that case, at pages 482–83, we also quoted with approval from Crawford, The Construction of Statutes, section 219 (1940), as follows:

" '. . . Inasmuch as the interpretation of statutes is a judicial function, naturally the construction placed upon a statute by an executive or administrative official will not be binding upon the court. Yet where a certain contemporaneous construction has been placed upon an ambiguous statute by the executive or administrative officers, who are charged with executing the statute, and especially if such construction has been observed and acted upon for a long period of time, and generally or uniformly acquiesced in, it will not be disregarded by the courts, except for the most satisfactory, cogent or impelling reasons. In other words, the administrative construction generally should be clearly wrong before it is overturned. Such a construction, commonly referred to as practical construction, although not controlling, is nevertheless entitled to considerable weight. It is highly persuasive.' "

What we then said also applies here.

I recapitulate: It is evident, and we should so hold, that by the enactment in 1916 of the amendment to Article 26, Articles for the Government of the Navy, Congress intended to, and did, grant to the Secretary of the Navy authority to designate separate and

detached commands which should have power to convene special courts-martial. That, subsequent to that enactment, the Secretary of the Navy construed the enactment as granting that power and acted accordingly until 1950 when the Uniform Code of Military Justice was enacted. That the Uniform Code of Military Justice effectively re-enacted such provisions of Article 26 and thereby recognized and ratified the prior interpretation of the Secretary of the Navy. That the action of the Secretary of the Navy in establishing a category of separate or detached commands is in substantial compliance with Article 23(a)(7), Uniform Code of Military Justice. That the action of the Commanding General, Force Troops, in designating the 2d Bridge Company as a separate and detached command, is a substantial compliance with the directive of the Secretary of the Navy. Therefore, the Commanding Officer of the 2d Bridge Company was authorized to convene special courts-martial under Article 23(a)(7) of the Uniform Code of Military Justice.

In my view, therefore, the petition for reconsideration should be granted.