UNITED STATES, Appellee

v

KENNETH A. WOODWARD, JR., Private First Class,
U. S. Marine Corps, Appellant

16 USCMA 266, 36 CMR 422

No. 19,278

June 17, 1966

*Lieutenant Edward F. O'Keefe,* USNR, argued the cause for Appellant, Accused.

*Colonel J. E. Hanthorn,* USMC, argued the cause for Appellee, United States.

## Opinion of the Court

FERGUSON, Judge:

The single issue presented in this case is whether the Commanding Officer, 3d Engineer Battalion (Rear), 3d Marine Division, Fleet Marine Force, located in the Ryukyu Islands, had the authority to appoint the special court-martial which tried the accused. Relying on our decision in United States v Ortiz, 15 USCMA 505, 36 CMR 3, petition for reconsideration denied, 16 USCMA 127, 36 CMR 283, the defense contends no such authority existed. The Government finds the same case to justify the existence of jurisdiction to appoint special courts-martial and further supports its conclusion by our more recent decision in United States v Kugima, 16 USCMA 183, 36 CMR 339. The well-prepared briefs and arguments of counsel indicate the need once again to emphasize the limited scope of our holding in United States v

Ortiz, supra. As was stated in the opinion on reconsideration:

".  .  . It is unwise to generalize from the application of a jurisdictional concept involving a particular type of unit that other types of commands likewise lack the requisite appointing power. Differences in size, type, organization, mission and many other factors which cannot now be foreseen may lead to entirely different conclusions concerning the existence of appointing authority under Code, supra, Article 23, or Secretarial regulations promulgated pursuant thereto." [16 USCMA 127, 128, 36 CMR 283, 284.]

Uniform Code of Military Justice, Article 23, 10 USC § 823, provides, *inter alia,* that special courts-martial may be convened by the commanding officer of a Marine Corps "detached battalion, or

266

corresponding unit" or by "the commanding officer of any separate or detached command" of any of the armed forces. On the basis of the information now before us, we agree with the United States that the Commanding Officer, 3d Engineer Battalion (Rear), on the dates in question, possessed the authority to appoint a special court-martial.

In June 1965, the unit was stationed on Okinawa, being a portion of the 3d Engineer Battalion (Reinforced), forward elements of which had been landed in Vietnam. It possessed a complement of 419 enlisted men and 19 officers, including three of field grade. These Marines were organized into four subordinate units, to wit: Headquarters and Service Company, Engineer Support Company, "C" Company, 3d Engineers, and 1st Platoon, "C" Company, 1st Engineers. The 3d Engineer Battalion (Rear) was commanded by a field grade officer, who was assisted by the normal battalion staff "consisting of the S-1, S-2, S-3 and S-4 sections as well as a supply officer and motor transport officer." The unit was detached and reported directly to divisional level, where general court-martial jurisdiction was exercised. Its mission was to support the 9th Marine Regiment, to provide all maintenance and construction at the Northern Training Area on Okinawa, and partially to maintain Camp Hansen, Okinawa. It was responsible for large quantities of Government property and vehicles.

As we noted in United States v Ortiz, supra, that opinion was limited to the authority of a separate company to convene special courts-martial as a "separate or detached command" under Code, supra, Article 23. Indeed, we specifically adverted therein to the Congressional desire for flexibility in creating units with statutory court-martial jurisdiction and refused to bind the terms of the pertinent Articles within unnecessarily restrictive fetters. *Ortiz*, supra, 15 USCMA at page 509. Hence, that decision is no authority for the proposition that the 3d Engineer Battalion (Rear) is not such a command as is endowed by Code, supra, Article 23, with the power to convene special courts-martial. Indeed, it is, as the Government notes, precedent for the contrary conclusion.

Thus, in a portion of our opinion concerning which all Judges reached unanimity of view, we found Congress determined, by enactment of Code, supra, Article 23, to confer the critical appointing power upon large units down to at least the size of separate battalions and related organizations. United States v Ortiz, 15 USCMA at pages 508, 509. And there can be no doubt that the organization with which we are now concerned fits well within the definition of a "detached battalion, or corresponding unit" or of a "separate or detached command" partaking of the same general nature. Code, supra, Article 23(a)(5), (6).

Thus, a battalion is defined as "a tactical military unit composed basically of a headquarters and two or more companies, batteries, or similar units." Webster's Third New International Dictionary, Unabridged, page 186. A like definition is found in AR 320–5, April 1965, Dictionary of the United States Army Terms. And see FMF Manual 6–3, Marine Infantry Battalion, paragraphs 1101(a) and 1104(a). And, as has been set out above, the organization in question was one which possessed a headquarters, a staff, and to which were assigned three companies of troops, as well as an additional platoon. Moreover, it existed as a separate entity and reported directly to a major headquarters exercising general court-martial jurisdiction. It was, therefore, a separate or detached battalion in every sense of the term and, accordingly, possessed the authority to appoint special courts-martial. Code, supra, Article 23. At the same time, it necessarily was also a separate or detached command within the meaning of the Code, supra, Article 23(a)(6). United States v Ortiz, supra.

We conclude, therefore, that the special court-martial which tried the accused, having been duly appointed by competent authority, possessed jurisdiction to try and punish him.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge KILDAY concur.