UNITED STATES, Appellee,

v.

Evans JACKSON, Staff Sergeant U. S. Army, Appellant.

No. 30,812.

CM 432738.

U. S. Court of Military Appeals.

May 16, 1977.

*Captain Steven J. McAuliffe* argued the cause for Appellant, Accused. With him on the brief were *Colonel Alton H. Harvey, Lieutenant Colonel John R. Thornock, Captain Robert D. Jones, Captain Anthony J. Siano,* and *Captain Lawrence E. Wzorek.*

*Captain Richard A. Kirby* argued the cause for Appellee, United States. With him on the brief were *Colonel Thomas H. Davis, Major Michael B. Kennett,* and *Major John T. Sherwood, Jr.*

*Colonel Julius C. Ullerich, Jr.,* Appellate Government Counsel, filed a brief amicus curiae on behalf of the United States Air Force.

Opinion of the Court

PER CURIAM:

Following our decision in *United States v. Courtney,* 1 M.J. 438 (1976), a number of questions arose concerning its applicability to other cases pending appellate review at the time *Courtney* was decided. Crucial to many of the petitions now before this Court is whether *Courtney* should be given retroactive effect or, instead, should be applied only prospectively.

In *Daniel v. Louisiana,* 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975), the Supreme Court reiterated the factors set forth

in *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) for resolving retroactivity questions:

> (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.

■ Retroactive application of *Courtney* would overturn virtually every conviction obtained in good faith reliance on *United States v. Walter,* 20 U.S.C.M.A. 367, 43 C.M.R. 207 (1971), which, until *Courtney,* was the controlling precedent on matters concerning the maximum penalty for offenses which could have been charged under either Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892, or Article 134, UCMJ, 10 U.S.C. § 934. *Cf. Fuller v. Alaska,* 393 U.S. 80, 81, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968).

Balancing the purpose to be served by the *Courtney* equal protection standard against past reliance by the military justice community on the *Walter* standard, together with the adverse effect retroactive application would have on the administration of military justice, the Court believes prospective application of the *Courtney* rule to cases tried or retried after the date of the *Courtney* decision is the more equitable course of action. *See United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975); *Williams v. United States,* 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); *Tehan v. United States ex rel. Shott,* 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); *cf. Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d

296 (1971); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968). *See also Gosa v. Mayden,* 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973); *Adams v. Illinois,* 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972); *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

■ Decisions of the Courts of Military Review interpreting *Courtney* also suggest that some confusion remains as to what the decision actually requires. In *Courtney,* the Court found that "drug offenses punished by the Army under Article 92, UCMJ, [were] virtually identical with those punished under Article 134, UCMJ." 1 M.J. at 440.[1] We went on to note that neither Congress nor the President "has sought to recognize varying 'degrees of evil'" insofar as treatment of drug offenses under Articles 92 and 134 is concerned. *Id.* We stressed the absence of "a uniform policy . . . with regard to how servicemen who commit drug offenses will be charged." *Id.* The resultant punishment differential between Articles 92 and 134, we concluded, violated the fifth amendment. In so concluding, the Court believes that the absence of *statutory or Manual* guidance[2] to insure equal treatment of *all* servicemembers coupled with the existence of two statutes which punish virtually identical conduct in different ways renders the use of a more severe penalty[3] for Article 134 drug offenses than that prescribed for similar violations of drug regulations under Article 92 unconstitutional.

The decision of the U. S. Army Court of Military Review is affirmed.

COOK, Judge (dissenting):

As I dissented in *United States v. Courtney,* 1 M.J. 438, 442 (1976), my reaction on

---

1. We reach the same conclusion insofar as the other services are concerned.

2. Through amendment of Army Regulation 600–50, the government suggests that equal treatment of Army personnel for drug offenses now is assured. The Uniform Code of Military Justice was designed to afford equal treatment for servicepersons in all branches of the armed forces. Consequently, regulatory amendment

of the sort proposed does not necessarily eliminate the equal protection infirmity addressed in *Courtney.*

3. It is, of course, incumbent upon the trial judge to ascertain the appropriate maximum penalty. *United States v. Harden,* 1 M.J. 258, (1976); *cf. United States v. Graves,* 23 U.S. C.M.A. 434, 50 C.M.R. 393, 1 M.J. 50 (1975).

the first reading of the majority's opinion was relief at the drastic limitation of its applicability. However, reflection on both the ambiguities in the *Courtney* opinion that have been perceived by the Courts of Military review and what this Court has done in other situations of this kind compels me to comment briefly on one of the major problems that has troubled the service courts and to disagree with the majority's denial of any retroactive effect to the *Courtney* decision.

While *Courtney* was pending decision, almost 300 cases presenting the same question were accumulated in the Army Court of Military Review as a result of postponement of decisions on cases under review by that court and remand of cases by this Court. The accused's case was filed in this Court before *Courtney*. Both were granted review on the same issue and were argued together; *Courtney* was decided by the Court, but this case was remanded to the Court of Military Review for further consideration "in light" of the *Courtney* decision. The teaching of the Court's opinion and the return of other cases to the service courts were considered by the Army Court of Military Review *en banc*; the result was a 7–to–6 division of opinion, with three different interpretations on major questions of law. Among these was whether the accused must assert a claim of denial of equal protection at the trial level in order, in the event of conviction, to urge that ground on appeal as a basis to invalidate the results of trial. The question is important here, and in many of the other cases held to await determination of *Courtney*, because no issue of invidious discrimination was tendered at trial.

In *Berra v. United States,* 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956), the Supreme Court turned aside a defense contention that the defendant had been denied equal protection by the judge in the imposition of sentence on the ground that the issue had not been raised at trial. More recently, in *United States v. Berrigan,* the Third Circuit Court of Appeals held that

"the burden of proving intentional or purposeful discrimination" in prosecution is "upon the defendants." 482 F.2d 171, 174 (1973). Five of the six dissenting judges of the Court of Military Review were of the opinion that a different rule obtains in the military. *United States v. Harden,* 1 M.J. 258 (1976), was cited as supportive of that conclusion.

The Court held in *Harden* that the accused's failure to object at trial did not preclude a challenge on appeal to the legality of the sentence on the ground it had been adjudged on the basis of a mistaken belief that the maximum period of confinement was twice that allowed by law. In setting aside the sentence, the Court noted that the trial judge has primary responsibility to determine the legal limits of punishment to which the accused is subject for the offenses of which he stands convicted; and it concluded that the accused's failure to object to the judge's determination is not a waiver of the right to dispute it. In this situation, the judge knows the offenses and, either through inquiry into the surrounding circumstances if there is a plea of guilty or from the evidence in the event of a plea of not guilty, he also knows the facts that affect the degree of punishment. *See* Manual for Courts-Martial, United States, 1969 (Rev.), paragraphs 70*b*, 76*a* (5) and 76*b*. In the present situation, however, the majority in *Courtney* did not predicate its decision on the mere existence of two provisions for punishment of the accused, with one being more severe than the other. Rather, the Court stressed the conjunction of two factors: one was the "utter lack of . . . (appropriate) guidance" or standards to justify selection of the provision carrying the greater punishment, and the other was "the existence of two statutes which . . . punish virtually identical conduct in different ways." 1 M.J. at 441. Presumptively, the latter circumstance should be known to the trial judge, but as to the former, unless the accused affirmatively raises the issue, the judge is not likely to know that the accused is threatened with discriminatory treatment because the prosecutor chose

a statute without considering "standards which assure the central aim of our judicial system." *Id.* at 441. I am satisfied, therefore, that *Harden* is not inconsistent with the general Federal civilian rule that the accused must raise an issue of invidious discrimination at trial or be foreclosed from asserting it on appeal. I am also satisfied that as neither the Uniform Code nor the Manual for Courts-Martial mandates a different rule and no apparent necessity for a different rule exists, the military practice should comport with that in the Federal civilian courts. *United States v. Weaver,* 23 U.S.C.M.A. 445, 450, 50 C.M.R. 464, 469, 1 M.J. 111, 116–117 (1975).

Waiver has its exceptions. One exception is that it will not be applied if it results in a clear miscarriage of justice. *United States v. Pierce,* 19 U.S.C.M.A. 225, 228, 41 C.M.R. 225, 228 (1970); *United States v. Sitren,* 16 U.S.C.M.A. 321, 322, 36 C.M.R. 477, 478 (1966). In this case, the Court of Military Review considered the question on the merits, and decided it against the accused. In my opinion, that decision is correct. I do not know, however, the circumstances of the other cases that have been held by the Court of Military Review or have been remanded by this Court for further review in the light of *Courtney.* In some, perhaps even in many, there may be justification for applying the plain error concept. As a result, I am constrained to consider the majority's determination that the *Courtney* holding applies only to "cases tried or re-tried after the date" of its publication, July 2, 1976.

All 13 judges of the Army Court of Military Review concluded from the *Courtney* opinion and this Court's remand of so many cases for consideration in the light of *Courtney,* that the Court intended *Courtney* to cover all cases held on review pending decision in that case. I would have reached the same conclusion. In any event, what the Court has done in other instances of this kind leads me to conclude that justice would be better served if *Courtney* were applied to those cases pending appeal to this Court when review was granted in *Courtney,* specifically, October 1, 1975. *United States v. Rowel,* 1 M.J. 289 (1976); *United States v. Schmeltz,* 1 M.J. 273 (1976); *United States v. Garcia,* 18 U.S.C.M.A. 5, 39 C.M.R. 5 (1968). *See also McPhail v. United States,* 1 M.J. 457, 459–460 (1976).

One other aspect of the majority opinion merits comment. The remarks in footnote 2 seem to imply that equal protection as applied to the military, either by the Constitution or the "design" of the Uniform Code, requires that regulations of conduct, violations of which can be charged as violations of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892, must be the same for every service. If that is the import of the remarks, I disagree with them. *See* my dissent in *Courtney, supra.*