UNITED STATES, Appellee,

v.

Specialist Four Charles A. DILLARD, SSN 531–60–8470, United States Army, Appellant.

CM 435996.

U. S. Army Court of Military Review.

13 Oct. 1977.

Captain William B. Ramsey, JAGC, argued the cause for the appellant. With him on the brief were Colonel Robert B. Clarke, JAGC, Lieutenant Colonel John R. Thornock, JAGC, and Captain D. David Hostler, JAGC.

Captain Robert D. Newberry, JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, Major Steven M. Werner, JAGC, and Captain Richard A. Kirby, JAGC.

Before The Court Sitting *EN BANC.*

## OPINION OF THE COURT

CLAUSEN, Chief Judge:

On 14 March 1977, appellant was charged with wrongful possession of heroin[1] in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. Appellant, pursuant to the terms of a pretrial agreement, entered a plea of guilty to the charged offense. Although the pretrial agreement fails to reflect the maximum punishment to which appellant would be subject, it is apparent from the record of trial[2] that all parties believed the maxi-

mum punishment for the charged offense to be dishonorable discharge, forfeiture of all pay and allowances, confinement at hard labor for ten years, and reduction to the lowest enlisted grade.[3]

Appellant alleges on appeal that his plea of guilty was improvident because there was a substantial misunderstanding on his part as to the correct maximum imposable punishment.

Appellant bases his allegation of error in this respect on the decision of the United States Court of Military Appeals in *United States v. Courtney,* 24 U.S.C.M.A. 280, 51 C.M.R. 796, 1 M.J. 438 (C.M.A.1976), and dicta in the opinion of our high court in the case of *United States v. Jackson,* 3 M.J. 101 (C.M.A.1977).

In *United States v. Courtney, supra,* the Court of Military Appeals stated:

"[W]e find drug offenses punished by the Army under Article 92, UCMJ, virtually identical with those punished under Article 134, UCMJ. The soldier who possesses marihuana in violation of Article 134 also violates AR 600–50 and hence Article 92. The converse is also true. Drug possession which constitutes a violation of Article 92 runs afoul of Article 134. The difference in penalty consequences is generated not from the accused's illegal act but rather solely from the accuser's unbridled discretion to charge the offense either under Article 92 or Article 134." [Footnote omitted.] 24 U.S.C.M.A. 280, 282, 51 C.M.R. 796, 798, 1 M.J. 438, 440 (C.M.A.1976).

In finding the foregoing situation to be a denial of Courtney's right to equal protection of the laws, the Court further stated:

---

1. The wrongful possession took place on 29 January 1977.

2. At arraignment, the military judge explained the maximum punishment to which the accused would subject himself by entry and acceptance of a plea of guilty.

3. This is the maximum punishment for the offense charged as established by the President

in paragraph 127c, Manual for Courts-Martial, United States, 1969 (Revised edition). The Congress in Article 56, UCMJ, delegated authority to the President to prescribe maximum punishments. The maximum punishment for a violation of Article 92 is dishonorable discharge, confinement at hard labor for two years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade.

"While equal protection decisions more frequently focus upon the effect of enunciated statutory guidance which highlights a difference in treatment among various classes of individuals, here it is the utter lack of such guidance coupled with the existence of two statutes which because of the table of maximum penalties punish virtually identical conduct in different ways that violates the Fifth Amendment. Neither Government counsel at trial nor on this appeal has suggested what, if any, standard is utilized in determining whether to charge an offense under Article 134 as opposed to Article 92 where the misconduct is violative of both provisions of the Uniform Code." [Footnote omitted.] 24 U.S.C. M.A. 280, 282, 51 C.M.R. 796, 798, 1 M.J. 438, 440 (C.M.A.1976).

In *United States v. Jackson, supra*, the Court of Military Appeals discussed the meaning of the decision in *Courtney*. There the Court stated:

"The resultant punishment differential between Articles 92 and 134, we concluded [in *Courtney*], violated the fifth amendment. In so concluding, the Court believes that the absence of *statutory* or *Manual* guidance [2] to insure equal treatment of *all* servicemembers coupled with the existence of two statutes which punish virtually identical conduct in different ways renders the use of a more severe penalty [3] for Article 134 drug offenses than that prescribed for similar violations of drug regulations under Article 92 unconstitutional."

[2] Through amendment of Army Regulation 600–50, the government suggests that equal treatment of Army personnel for drug offenses now is assured. The Uniform Code of Military Justice was designed to afford equal treatment for servicepersons in all branches of the armed forces. Consequently, regulatory amendment of the sort proposed does not necessarily eliminate the equal protection infirmity addressed in *Courtney*.

[Footnote 3 omitted.] 3 M.J. 101, 102 (C.M.A.1977).

As the footnote above indicates, Army Regulation 600–50 has been amended. The regulation as amended precludes the charging of wrongful possession of heroin by members of the U.S. Army as a violation of Article 92. Effective 15 January 1977 wrongful possession of heroin by a member of the U.S. Army is chargeable only as a violation of Article 134.[4] Similar amendments to an Air Force regulation have had the same effect with regard to members of the U.S. Air Force.[5] The actions of the Secretaries of the Army and the Air Force were in direct response to the Court of Military Appeals decision in *Courtney*.

The Secretary of the Navy and the Secretary of Transportation have taken no action

4. Effective 15 January 1977, paragraph 4–2a(7), Army Regulation 600–50, Standards of Conduct for Department of Army Personnel, April 1973, was amended to read:

"(7)(a) Except as authorized by regulation or other competent authority, military personnel will not use, possess, sell, transfer, or introduce into any military unit, base, station, post, ship, or aircraft any dangerous drug. The term 'dangerous drug' means a non-narcotic drug which is habit forming or has a potential for abuse because of its stimulant, depressant, or hallucinogenic effect as determined by the Attorney General of the United States as defined in 21 U.S.C. Section 801 et seq., and includes but is not limited to: amphetamines, barbiturates, lysergic acid diethylamide (LSD), mescalin, 4-methyl-2 demethoxyamphetamine (STP), psilocybin, psilocyn, phencyclidine (PCP) and diemethyl-triptamine (DMT).

(b) As a matter of policy, a military person who violates (a) above shall be charged only under Article 92, Uniform Code of Military Justice, and not under any other provision of the Uniform Code of Military Justice.

(c) As a matter of policy, the use, possession, sale, transfer, or introduction into a military unit, base, station, post, ship, or aircraft of marihuana or any narcotic drug by military personnel is chargeable only as a violation of Article 134, Uniform Code of Military Justice. The term 'marihuana' used in this paragraph is defined in 21 U.S.C. Section 802(15) (1970). The term 'narcotic drug' as used in this section is defined in 21 U.S.C. Section 802(16) (1970) and includes but is not limited to: heroin, cocaine, codeine, methadone, morphine, and opium."

5. We agree with the interpretation placed on their regulation by Chief Judge Abrams of the Air Force Court of Military Review in *United States v. Hoesing*, 3 M.J. 1058 (A.F.C.M.R. 1977).

since the decision in *Courtney* to amend the drug regulations which apply to members of the U.S. Navy and the U.S. Coast Guard.[6]

The question with which we are now faced is, "Did the amendment of AR 600–50 to preclude the charging of wrongful possession of heroin by members of the U.S. Army under Article 92 solve the equal protection problem addressed in *Courtney*?" For the reasons we outline below, we answer the question in the affirmative.

The primary evil which the *Courtney* decision sought to correct was "the accuser's unbridled discretion to charge the offense either under Article 92 or Article 134." It was this "unbridled discretion," *i. e.* lack of statutory or *Manual* guidance, coupled with the existence of two statutes which, because of the table of maximum punishments, permit to be punished virtually identical conduct in different ways that violated the Fifth Amendment. As a result of the amendment of AR 600–50, at the time this appellant was charged, there was only one statute under which the charge against him could be laid. That was Article 134.[7] Thus, far from having unbridled discretion as to which Article to charge the offense under, the appellant's accused had no discretion whatsoever. There is now only one maximum penalty to which this appellant or any other member of the U.S. Army may be subject for commission of this offense. That penalty is as prescribed by the President in the Table of Maximum Punishments and is the maximum penalty of which the appellant was advised when he entered his plea. As to all others subject to the same statutes and regulations appellant stands on an equal basis.

Our discussion would end here except for certain language used by the Court of Military Appeals in footnote two to the opinion in *United States v. Jackson, supra*. Again, we cannot ignore the fact that the Court therein stated, "The Uniform Code of Military Justice was designed to afford equal treatment for servicepersons in all branches of the armed forces."

Appellant interprets this language to mean that uniformity among all branches of the armed forces is required in charging drug offenses under the Uniform Code of Military Justice. Appellant argues that the failure of even one branch of the service to be in conformity with the others will give rise to the due process violation enunciated in *Courtney* and *Jackson*. Appellant reasons that since there are valid punitive regulations in the Navy and Coast Guard which prohibit the conduct for which appellant was charged under Article 134, he has been denied equal protection of the laws because had a member of the Navy or Coast Guard been charged under Article 134 for the same offense, their punishment would have been limited to that imposable for a violation of Article 92 based on the *Courtney* decision. What appellant's argument overlooks is that he is not, except in limited situations, subject to regulations of any armed force other than those of the U.S. Army.

We believe the legislative scheme devised by the Congress for the government of the armed forces evidences a congressional in-

**6.** On 7 July 1976, five days after the decision in *Courtney*, the Judge Advocate General of the Navy issued a "Naval Speedletter" in response to the *Courtney* decision. Therein The Judge Advocate General of the Navy stated: "In *United States v. Courtney*, USCMA ruled that when an individual is found guilty of a drug offense charged under Article 134, UCMJ, which could also have been charged under Article 92, UCMJ, as a violation of a general regulation, the maximum sentence is limited to that imposable for violation of a general regulation under Article 92, UCMJ. Although the decision in *Courtney* affects the sentence imposable for drug violations it does not affect the validity of convictions for drug abuse in violation of Article 134, UCMJ. Accordingly, although it is permissible to continue to charge drug violations under Article 134, UCMJ, the maximum sentence imposable regardless of the article under which the offense is charged is a dishonorable discharge, confinement at hard labor for two years, reduction to pay grade E–1, and forfeiture of all pay and allowances." As far as we have been able to determine, there have been no directions or messages to Coast Guard authorities in response to the *Courtney* decision.

**7.** See Footnote 3.

tent which runs counter to the appellant's argument. The statutes which govern the armed forces [8] set up the Department of the Army, the Department of the Navy and the Department of the Air Force and provide for the appointment of a Secretary for each service.[9] The Secretary of Transportation holds a similar position with regard to the Coast Guard.[10] Each of the Secretaries has been granted, either specifically or by inference, the power to prescribe regulations to carry out the functions, powers, and duties of the office.[11] To hold, as appellant would have us do, that the Secretary of the Navy or the Secretary of Transportation has the power to promulgate regulations which affect the administration of military justice within the Army would not be acceptable. We believe that the Congress never intended to grant any Service Secretary the authority to promulgate regulations which would have an effect outside their respective areas of responsibility.

Moreover, the Congress purposefully divested itself of the rule making burden for the Armed Forces in 1875. Paragraph 1–6, Military Administrative Law Handbook, DA Pam 27–21, October 1973. Since that time the basic statutes have been reenacted numerous times. It is inconceivable that Congress was not aware of the disparities of the Service regulations at those times. Such awareness is often held ratification of the administrative regulations. Am.Jur.2d, Admin.Law, § 241 *et seq.*

The appellant also alleges that his plea of guilty was improvident because the military judge failed to adequately inquire into the appellant's understanding of the terms and conditions of the pretrial agreement. We have examined those portions of the record relating to this inquiry and examined the pretrial agreement and the stipulation of fact. We find as a matter of fact that the terms and conditions of the pretrial agreement are simple and straightforward and we are convinced that the trial judge's inquiry substantially complied with all the requirements in *United States v. Green.*[12]

The findings of guilty and the sentence are *AFFIRMED.*

Senior Judges CARNE and CLAUSE, and Judges MITCHELL, COSTELLO, MOUNTS, TALIAFERRO, and DeFORD concur.

FULTON, Judge, dissenting:

I dissent and would hold that the maximum confinement to which the appellant could have been subjected for his drug offense was two years.

As the majority opinion observes, the Army no longer has any regulation enabling heroin offenses (or, for that matter, other offenses involving either narcotics or marihuana) to be charged as violations of Article 92.[1] Those offenses uniformly are to be charged as violations of Article 134 of the Code,[2] for which the President has authorized greater punishment in the form of longer terms of confinement.[3] It appears, however, that members of the Navy, Marine Corps, or Coast Guard involved with the same drugs are still subject to regulations that are enforceable under Article 92.[4] Therefore, although the appellant supposedly risked confinement for ten years, for

8. Title 10, United States Code.

9. Department of the Army, 10 U.S.C. § 3012; Department of the Navy, 10 U.S.C. § 5031; Department of the Air Force, 10 U.S.C. § 8012.

10. 14 U.S.C. § 92.

11. For example, see 10 U.S.C. § 3012(g).

12. 24 U.S.C.M.A. 299, 52 C.M.R. 10, 1 M.J. 453 (C.M.A.1976).

1. Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892.

2. Article 134, UCMJ, 10 U.S.C. § 934.

3. Manual for Courts-Martial, United States, 1969 (Revised edition), Table of Maximum Punishments, Section A, at 25–12, 25–15.

4. See Naval Speedletter, JAG:203:RGK:dm, Ser: 203/38076, 7 July 1976. Government counsel suggest that the Navy and Coast Guard regulations in question do not meet the standards of notice and clarity required as a basis for criminal prosecution. As apparently do the majority, I reject that contention.

identical misconduct a member of the Naval service could be confined only for two years, either because of being charged under Article 92 or because punishment under Article 134 has been limited by *United States v. Courtney*, 24 U.S.C.M.A. 280, 51 C.M.R. 796, 1 M.J. 438 (1976).

Unlike the situation present in *Courtney*, the possible disparity in punishment no longer stems from any unbridled discretion exercisable by individual convening authorities.[5] Even so, in *United States v. Jackson*, 3 M.J. 101 (C.M.A.1977), the Court of Military Appeals has further explained and apparently broadened the rationale for its views as to equal protection.

In *Courtney*, the Court spoke of "the effect of *enunciated statutory guidance* which highlights a difference in treatment among various classes of individuals," then said—

> [H]ere it is the utter lack of *such guidance* coupled with the existence of two statutes which because of the table of maximum penalties punish virtually identical conduct in different ways that violates the Fifth Amendment.

24 U.S.C.M.A. at 282, 51 C.M.R. at 798, 1 M.J. at 440 (emphasis mine). In *Jackson*, adding its own emphasis, the Court said:

> [T]he absence of *statutory or Manual* guidance to insure equal treatment of *all* service-members coupled with the existence of two statutes which punish virtu-

ally identical conduct in different ways renders the use of a more severe penalty for Article 134 drug offenses than that prescribed for similar violations of drug regulations under Article 92 unconstitutional.

3 M.J. at 102 (emphasis in original) (footnotes omitted).

Turning its attention to the Army's newly revised regulation, the Court then said:

> Through amendment of Army Regulation 600–50, the government suggests that equal treatment of Army personnel for drug offenses now is assured. The Uniform Code of Military Justice was designed to afford equal treatment for servicepersons in all branches of the armed forces. Consequently, regulatory amendment of the sort proposed [sic] does not necessarily eliminate the equal protection infirmity addressed in *Courtney*.

*Id.* at 102 n.2. Although that is obiter dictum, I believe that we must follow it.[6] As we have seen, lacking similar regulatory amendments applying to other services, the equal protection infirmity (*viz.*, a punishment differential) as perceived by the Court of Military Appeals remains. Complete uniformity among the services was not an objective of the Uniform Code, replacement of the Articles of War and the Articles for the Government of the Navy with a single code being regarded as quite sufficient for that purpose.[7] Nevertheless, I do not be-

---

5. Convening authorities of any service may, however, affect the maximum punishment for an offense through the choice as to the level of court to which to refer charges.

6. Whatever may be said of the wisdom and effect of the dictum, the fact remains that the Court of Military Appeals seems to have chosen it as one means of exercising supervision over the lower military courts and influencing the administration and development of military law. *Compare United States v. Elmore*, 24 U.S.C.M.A. 81, 82–83, 51 C.M.R. 254, 255–56, 1 M.J. 262, 263–64 (1976) (Fletcher, C.J., concurring), *with United States v. Green*, 24 U.S.C.M.A. 299, 302, 52 C.M.R. 10, 13, 1 M.J. 453, 455 (1976). For other examples, *see United States v. Palenius*, 25 U.S.C.M.A. 222, 229–31, 54 C.M.R. 549, 556–57, 2 M.J. 86, 91–92 (1977); *United States v. Hughes*, 24 U.S.C.M.A. 169, 170 n.3, 51 C.M.R. 388, 389 n.3,

1 M.J. 346, 347 (1976). Concerning the controlling effect of the higher court's decisions, *see United States v. Heflin*, 23 U.S.C.M.A. 505, 506 n.6, 50 C.M.R. 644, 645 n.6, 1 M.J. 131, 132 (1975).

7. Although a greater measure of uniformity than then existed was one of the goals, other problems—such as command control—were uppermost in the minds of those who drafted and those who enacted the Code. *See, e. g.*, Morgan, The Background of the Uniform Code of Military Justice, 29 Mil.L.Rev. 17 (1965). Express provisions of the Code permit some differences among services, even as to punishment. *See* Article 15(a), UCMJ, 10 U.S.C. § 815. Other differences also have been regarded as permissible, such as the Army's earlier unwillingness to permit special courts-martial to adjudge bad-conduct discharges. Aycock and Wurfel, Military Law under the Uniform Code of Military Justice 84 (1955).

lieve that differences such as the one involved in this case were contemplated.

I have not overlooked the potentially broad impact of the dictum last-quoted above. As the dissenting judge in *Jackson* observed:

> The remarks in footnote 2 seem to imply that equal protection as applied to the military, either by the Constitution or the "design" of the Uniform Code, requires that regulations of conduct, violations of which can be charged as violations of Article 92 . . ., must be the same for every service. If that is the import of the remarks, I disagree.

3 M.J. at 104 (Cook, J., dissenting). Were I to believe that to be the intended import, I would disagree too. A holding that one armed force (or installation or command within an armed force) may not give punitive effect to a particular regulatory requirement or prohibition unless each of the others does likewise would be unwarranted. As I understand the Court of Military Appeals majority, the rule is limited solely to the question of maximum punishment.[8]

I find it unnecessary in this opinion to discuss the further questions that would be raised were this to be the majority opinion in the case.[9]

Senior Judges JONES and COOK, and Judges DRIBBEN and FELDER concur in the dissent.

---

**8.** *Cf.* Manual for Courts-Martial, *supra* n.3, Table of Maximum Punishments, Section A, at 25–12 n.5(1). As a practical matter, the application of the rule may be limited to drug cases, which seem to be spawning their share of departures from previously established doctrines. *See, e. g., United States v. Courtney, supra; United States v. Thomas,* 24 U.S.C.M.A. 228, 51 C.M.R. 607, 1 M.J. 397 (1976); *United States v.*

*Hughes,* 24 U.S.C.M.A. 169, 51 C.M.R. 388, 1 M.J. 346 (1976).

**9.** A holding that the maximum punishment included only two years' confinement instead of ten would raise the question of providency of the guilty plea and, if provident, the impact the sentence stemming from any misunderstanding by sentencing and approving authorities.