UNITED STATES, Appellee,

v.

David R. HOESING, Airman First Class, U. S. Air Force, Appellant.

UNITED STATES, Appellee,

v.

Charles A. DILLARD, Specialist Four, U. S. Army, Appellant.

No. 35,054.
ACM 22243.
No. 35,205.
CM 435996.

U. S. Court of Military Appeals.

Sept. 18, 1978.

Appearances: For appellant (Hoesing): *Captain Thomas S. Markiewicz* (argued); *Colonel B. Ellis Phillips* (on brief); *Lieutenant Colonel Larry G. Stephens* (on brief).

For appellee: *Major Alvin E. Schlechter* (argued); *Colonel Julius C. Ullerich, Jr.* (on brief).

For appellant (Dillard): *Captain William B. Ramsey* (argued); *Colonel Robert B. Clarke* (on brief); *Colonel Edward S. Adamkewicz, Jr.*; *Major Benjamin A. Sims* (on brief); *Captain D. David Hostler* (on brief).

For appellee: *Captain Robert D. Newberry* (argued); *Colonel Thomas H. Davis* (on brief); *Lieutenant Colonel R. R. Boller* (on brief); *Captain Richard A. Kirby* (on brief).

Opinion of the Court

COOK, Judge:

Among other offenses, appellant Hoesing was convicted by a general court-martial of three specifications of transactions with hashish, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. Appellant Dillard was convicted by a general court-martial of possession of heroin, in violation of Article 134, *supra.* In both cases, the maximum imposable punishment for the offenses was computed by utilizing the punishment prescribed in the Table of Maximum Punishments [1] for a violation of Article 134.[2]

Both appellants challenged the validity of the computation of the maximum punishment before their respective Courts of Military Review. Primarily, they relied upon *United States v. Courtney*, 1 M.J. 438 (C.M.A.1976), which held that where conduct constitutes both a violation of a general order, under Article 92, 10 U.S.C. § 892, and a violation of Article 134, the maximum imposable punishment is the lesser of the two punishments regardless of which article was used as the basis for prosecution. Each court held that the *Courtney* limitation was inapplicable because the service regulations had been changed to remove command discretion in selection of which article under which to lodge the charge. *United States v. Dillard*, 4 M.J. 577 (A.C.M.R.1977) (*en banc*); *United States v. Hoesing*, 3 M.J. 1058 (A.F.C.M.R.1977).

Specifically, the applicable Air Force regulation, paragraph 4–4, AFR 30–2, was modified effective November 8, 1976, to provide as follows:

Air Force members and civilians who are subject to the Uniform Code of Military Justice (UCMJ) will not use, possess, sell, transfer, or introduce into a military unit, base, station, post, ship or aircraft any dangerous drugs as specified in paragraph 4–2b. Violations of these prohibitions are chargeable under the UCMJ,

Article 92, for failure to obey a lawful general regulation. The use, possession, sale, transfer or introduction into a military unit, base, station, post, ship or aircraft of marijuana or any habit-forming narcotic drug by an Air Force member or civilian subject to the UCMJ is punishable under Article 134, UCMJ.

The relevant Army regulation, paragraph 4–2a(7), AR 600–50, was modified effective January 15, 1977, and now sets forth the following:

(7)(a) Except as authorized by regulation or other competent authority, military personnel will not use, possess, sell, transfer, or introduce into any military unit, base, station, post, ship, or aircraft any dangerous drug. The term "dangerous drug" means a non-narcotic drug which is habit forming or has a potential for abuse because of its stimulant, depressant, or hallucinogenic effect as determined by the Attorney General of the United States as defined in 21 U.S.C. Section 801 et seq., and includes but is not limited to: amphetamines, barbiturates, lysergic acid diethylamide (LSD), mescalin, 4-methyl-2 demethoxyamphetamine (STP), psilocybin, psilocyn, phencyclidine (PCP) and diemethyltriptamine (DMT).

(b) As a matter of policy, a military person who violates (a) above shall be charged only under Article 92, Uniform Code of Military Justice, and not under any other provision of the Uniform Code of Military Justice.

(c) As a matter of policy, the use, possession, sale, transfer, or introduction into a military unit, base, station, post, ship, or aircraft of marihuana or any narcotic drug by military personnel is chargeable only as a violation of Article 134, Uniform Code of Military Justice. The term "marihuana" used in this paragraph is defined in 21 U.S.C. Section 802(15) (1970). The term "narcotic drug" as used in this section is defined in 21 U.S.C.

1. *Manual for Courts-Martial, United States,* 1969 (Revised edition), para. 127c SECTION A.

2. The punishment includes confinement at hard labor for 10 years for the heroin offense and 5 years for each of the hashish offenses.

Section 802(16) (1970) and includes but is not limited to: heroin, cocaine, codeine, methadone, morphine, and opium.[3]

Chief Judge Fletcher, speaking for a majority of the Court in *Courtney*,[4] held that the variable punishments resulting from the two articles violated the equal protection clause as embodied in the Fifth Amendment because:

> [W]e find drug offenses punished by the Army under Article 92, UCMJ, virtually identical with those punished under Article 134, UCMJ. The soldier who possesses marihuana in violation of Article 134 also violates AR 600–50 and hence Article 92. The converse is also true. Drug possession which constitutes a violation of Article 92 runs afoul of Article 134. The difference in penalty consequences is generated not from the accused's illegal act but rather solely from the accuser's unbridled discretion to charge the offense either under Article 92 or Article 134.

*United States v. Courtney, supra* at 440 (footnote omitted).

As a result of the amendments to the Army and Air Force regulations subsequent to the release of the opinion in *Courtney*, there is no longer "unbridled discretion" with the services involved to choose between articles with different punishments; now equality of treatment is assured. Nevertheless, appellants submit that intraservice equality is not sufficient to remove the improper discrimination which a majority of the Court found in *Courtney*. Appellants note that interservice discrimination still exists because applicable regulations of both the Coast Guard and the Navy have not been changed and permit prosecutions under Article 92 for offenses involving hab-

it-forming, narcotic drugs and marijuana. *See* para. 9–2–15, CG–300 (1975); 1973 Naval Regulations, Article 1151, 32 C.F.R. Section 700.1151 (1976). Support for that position is said to be present in *United States v. Jackson*, 3 M.J. 101, 102 n. 2 (C.M.A.1977). There, in a footnote, the Court remarked:[5]

> Through amendment of Army Regulation 600–50, the government suggests that equal treatment of Army personnel for drug offenses now is assured. The Uniform Code of Military Justice was designed to afford equal treatment for service-persons in all branches of the armed forces. Consequently, regulatory amendment of the sort proposed does not necessarily eliminate the equal protection infirmity addressed in *Courtney*.

The footnote comment in *Jackson* was not of decisional import. Now, having had the benefit of briefs and argument on the matter, we conclude that it cannot be promulgated as a rule of law.

In *United States v. Dillard, supra* at 580–81, Chief Judge Clausen, writing for a majority of the United States Army Court of Military Review, made the following pertinent observations:

> We believe the legislative scheme devised by the Congress for the government of the armed forces evidences a congressional intent which runs counter to the appellant's argument. The statutes which govern the armed forces[8] set up the Department of the Army, the Department of the Navy and the Department of the Air Force and provide for the appointment of a Secretary for each service.[9] The Secretary of Transportation holds a similar position with regard to the Coast Guard.[10] Each of the Secretaries

---

3. Although the regulation refers to a "matter of policy," the United States Army Court of Military Review interpreted the regulation as mandatory. *See United States v. Castner*, 3 U.S.C. M.A. 466, 468, 13 C.M.R. 22, 24 (1953). In view of the use of the mandatory verb "shall" we agree with their construction of the regulation.

4. I dissented to the majority opinion in *United States v. Courtney*, 1 M.J. 438, 442 (C.M.A. 1976).

5. I dissented in *United States v. Jackson*, 3 M.J. 101, 102–4 (C.M.A.1977), and noted my disagreement with the implication of the quoted footnote "that regulations of conduct, violations of which can be charged as violations of Article 92 . . . must be the same for every service."

has been granted, either specifically or by inference, the power to prescribe regulations to carry out the functions, powers, and duties of the office.[11] To hold, as appellant would have us do, that the Secretary of the Navy or the Secretary of Transportation has the power to promulgate regulations which affect the administration of military justice within the Army would not be acceptable. We believe that the Congress never intended to grant any Service Secretary the authority to promulgate regulations which would have an effect outside their respective areas of responsibility.

[8] Title 10, United States Code.

[9] Department of the Army, 10 U.S.C. § 3012; Department of the Navy, 10 U.S.C. § 5031; Department of the Air Force, 10 U.S.C. § 8012.

[10] 14 U.S.C. § 92.

[11] For example, see 10 U.S.C. § 3012(g).

[1, 2] In permitting the Secretary of each service to propound regulations for the government of his respective service, Congress sanctioned distinctions between the treatment of personnel in the various services. While the issue in this case relates to the punishment for an act in violation of the Uniform Code of Military Justice, appellants' argument for interservice equality of treatment would require all services to adopt the same punitive regulations, as the absence of a regulation in one service would prohibit the imposition of any punishment for a violation of a regulation in another service. Congress has never required such uniformity among the services, and it has consistently authorized the Secretary of each armed force to promulgate regulations to meet special needs of his service, as determined by him. *Courtney* did not impose a requirement of unanimity of secretarial decision. While the member of one service may face a lesser punishment than the member of another for the same criminal act, the disparity is not a result of the exercise of discretion by his accuser. A similar situation exists in application of the Assimilative Crimes Act, 18 U.S.C. § 13, under which the penal law of a state is made punishable under Article 134 when the act is committed on a military base. *See United States v. Rowe*, 13 U.S.C.M.A. 302, 32 C.M.R. 302 (1962); *United States v. Picotte*, 12 U.S.C.M.A. 196, 30 C.M.R. 196 (1961). Accordingly, we conclude that the punishment was properly calculated under Article 134.

The decisions of the United States Air Force, and the United States Army Courts of Military Review are affirmed.

Chief Judge FLETCHER and Judge PERRY concur.