UNITED STATES, Appellee,

v.

Private (E–1) Curtis B. RICHARDSON,
SSN 246–11–2351, United States
Army, Appellant.

SPCM 13182.

U. S. Army Court of Military Review.

28 April 1978.

Colonel Robert B. Clarke, JAGC, Captain Carlos A. Vallecillo, JAGC, and Major Benjamin A. Sims, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, and Major Steven M. Werner, JAGC, were on the pleadings for appellee.

Before JONES, MITCHELL and De-FORD, Appellate Military Judges.

## OPINION OF THE COURT

MITCHELL, Judge:

The appellant was convicted by a special court-martial, contrary to his pleas, of two specifications of absence without leave in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. He was

sentenced to a bad-conduct discharge and confinement at hard labor for two months. The convening authority approved the sentence.

At the trial below the defense counsel moved that the charges be dismissed due to lack of jurisdiction based on the following argued reasons:

1. The Court-Martial Convening Order (CMCO) Number 105 was from a different command than that of the commander who referred the case to trial.
2. The ability to refer the case to trial could not be delegated.
3. The members, judge, and other personnel had not been selected by the convening authority who attempted to refer the case to trial.

After extensive argument by opposing counsel, the trial judge denied the motion.

The relevant facts are somewhat complicated. Located on the installation of Fort Riley are three general court-martial jurisdictions, 1st Infantry Division (Mech) and Fort Riley, (General Order No. 35, Headquarters, Department of the Army, 6 July 1970); Headquarters, Fort Riley, (General Order No. 30, Headquarters, Department of the Army, 11 July 1956); and the United States Army Retraining Brigade (USARB). However, by mutual agreement between Commander, 1st Infantry Division and Fort Riley, and Commander, U. S. Army Retraining Brigade, general courts-martial and BCD special courts-martial would only be convened by the commander of Fort Riley.

On 26 August 1977, Major General Benedict, Commander of 1st Infantry Division and Fort Riley, appointed a special court-martial empowered to adjudge a bad-conduct discharge (Court-Martial Convening Order 105). He authorized the court-martial "to try such persons as may properly be brought before it."

Four days later, 30 August 1977, General Benedict and the major elements of the 1st Infantry Division deployed to Germany to participate in the field exercise, Reforger.

Those members of the division who remained at Fort Riley were designated as 1st Infantry Division (Provisional) Rear. The appellant, a member of the U. S. Army Retraining Brigade, a separate fixed command located at Fort Riley, was not involved in the 1st Division deployment.

Colonel Spiller, Deputy Post Commander, Fort Riley, assumed command of the 1st Infantry Division (Provisional) Rear effective 29 August 1977 to 10 October 1977 and in another order assumed command of Fort Riley, effective during the same period.

The appellant's charges, which had been preferred on 19 August 1977, were referred to trial on 7 September 1977, some ten days following the Division's departure. Colonel Spiller, in the indorsement, indicated that he was referring them by virtue of his authority as Commander, Headquarters, Fort Riley. However, he referred the case to the court-martial appointed by General Benedict (CMCO 105) before he departed for Europe.

On 12 September 1977, Colonel Spiller, acting in his capacity as Commanding Officer, Fort Riley, amended CMCO 105 by substituting Captain Olewnik as Defense Counsel, vice Captain Hall. All other personnel named on the order remained unchanged.

Government appellate counsel argue that Colonel Spiller's referral of charges was totally proper in that he was the acting commander in the absence of General Benedict; that there was no evidence that General Benedict's authority was delegated in contravention of Paragraph 5a (5), Manual for Courts-Martial, United States, 1969 (Revised edition); and that Colonel Spiller effectively ratified General Benedict's earlier selection of the court personnel. This, they argue, was accomplished by virtue of his name appearing in the command line of the 1st indorsement to the charge sheet and on the amendment to the Court-Martial Convening Order (CMCO 105) issued by General Benedict.

■ Our resolution of these issues is not aided or complicated, as the case may be, by

any presumption of legality or jurisdiction that normally attaches to the judgments or sentence of permanently established courts of general jurisdiction.[1] A court-martial is a special purpose tribunal of limited jurisdiction and transitory existence appointed by one of numerous military commanders when, in his discretion, such action is desirable. His power to appoint does not stem from fixed and permanent foundations, is not even a prerogative of his rank,[2] but is an incident of command which may be very temporarily exercised. The United States Court of Military Appeals has delineated in *United States v. Robinson*, 13 U.S.C.M.A. 674, 33 C.M.R. 206 (1963), some appropriate considerations relative to the jurisdiction of a court-martial when it points out:

". . . a court-martial is the creature of statute, and as a body or tribunal, it must be convened and constituted in entire conformity with the provisions of the statute, or else it is without jurisdiction." *McClaughry v. Deming*, 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049 (1902).

"To give effect to its sentences it must appear affirmatively and unequivocally that the court was legally constituted; that it had jurisdiction; that all the statutory regulations governing its proceedings had been complied with, and that its sentence was conformable to law." *Runkle v. United States*, 122 U.S. 543, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887).

■ It does not, however, follow that every violation of a statutory provision in connection with the formation and proceedings of a court-martial will be considered a jurisdictional defect. In the words of the Supreme Court, it must be determined whether the statutory provisions involved constitute an "indispensable prerequisite" to the exercise of court-martial jurisdiction.[3]

The concept that jurisdiction of a court-martial is not presumed passes through to the post-trial procedural rules prescribed in the *Manual*. As an example a convening authority may not presume that he had authority to appoint a court-martial but is required to question his own exercise of powers in each case resulting in a conviction.[4]

Although the first indorsement to the charges, appearing on page 3 of the charge sheet is generally spoken of as the "reference for trial", it is merely the formal means of recording and promulgating an earlier order personally issued by the convening authority. The pretrial advice of the staff judge advocate of the 1st Infantry Division (Provisional) Rear and Fort Riley, addressed to the Commander, Headquarters, Fort Riley, recommending that "the charge be referred to a special court-martial convened by you and authorized to adjudge a bad conduct discharge" was approved by the personal signature of Colonel Spiller on 7 September 1977 as commander of Fort Riley. This constituted the convening authority's order and shows beyond cavil that he was then acting in that capacity.

■ It is apparent to us that the temporary integration of the rear detachment of the mobile 1st Infantry Division and the fixed installation, Fort Riley, under one commander, did not destroy the identity of each and create a single command. Common practice provides that command of an installation is normally the responsibility of the senior eligible and regularly assigned officer present. Accordingly, Colonel Spiller, as the ranking eligible officer assigned at Fort Riley was the proper person to assume command of the remaining 1st Infantry Division troops as well as the installation of Fort Riley. That the commander "wears two hats" is a cliche which is founded on fact, not fantasy. Although designated as an integrated one, we see the command to be structured in a manner which is

---

1. *Fauntleroy v. Lum*, 210 U.S. 230, 28 S.Ct. 641, 52 L.Ed. 1039 (1908).

2. Paragraph 5a (5), Manual for Courts-Martial, United States, 1969 (Revised edition).

3. *Humphrey v. Smith*, 336 U.S. 695, 69 S.Ct. 830, 93 L.Ed. 986 (1949). *See also United States v. May*, 1 U.S.C.M.A. 174, 2 C.M.R. 80 (1952).

4. Paragraph 86b (1)(a), MCM, 1969 (Rev.).

calculated to preserve and perpetuate the individuality, integrity and separate status of each of the two commands. For that reason we see no illegality in Colonel Spiller, while wearing his "Fort Riley" hat, referring the charges to an integrated court-martial which his predecessor in command, General Benedict, had selected while wearing both hats. Because of the restrictive language contained in the Memorandum of Agreement between the commander of the First Infantry Division and Fort Riley and the commander of the Retraining Brigade, only the commander of Fort Riley could convene the court-martial to try the appellant.

For the reasons indicated we find that the Court-Martial Convening Order (DMCO 105) was not from a different command than that commanded by Colonel Spiller when he referred the case to trial.

█ Although the appellant has also attacked the membership of the court-martial before which he was tried on the additional theory that it was not personally selected by Colonel Spiller (i. e., the personnel having been selected on 26 August 1977 by General Benedict, his predecessor in command), we deem the action of Colonel Spiller in referring the case to the particular court-martial by 1st indorsement to the charge sheet and five days later ordering an amendment to the Court-Martial Convening Order, as being a positive indication of his personal adoption and selection of the membership of the court-martial appointed by General Benedict for the purpose of trial of the appellant. We are of the opinion that the doctrine of ratification clearly applies here.

In any event, we know as a matter of normal staff procedure, it is customary for a staff judge advocate to discuss, with the convening authority whom he serves, matters relating to the appointment and membership of courts-martial and to offer the necessary guidance to the convening authority in the exercise of the discretion vested in him by Articles 22 and 25, UCMJ. The application of these principles and practices of staff procedure to the record at large in the instant case leads to the conclusion that normal staff procedures were followed here.

Therefore, we are convinced that the membership named on CMCO No. 105 was personally seen and approved by Colonel Spiller.[5]

█ The military judge erred in admitting into evidence a prosecution exhibit reflecting the appellant's prior conviction for unauthorized absence. It did not indicate the completion of supervisory review. *United States v. Heflin,* 1 M.J. 131 (C.M.A. 1975). Sentence reassessment is necessary.

The findings of guilty are affirmed. Reassessing the sentence on the basis of the above-indicated error and the entire record, only so much of the sentence is affirmed as provides for a bad-conduct discharge.[6]

Senior Judge JONES and Judge DeFORD concur.

---

5. *See United States v. Sandall,* 45 C.M.R. 660 (A.C.M.R.1972), *pet. denied* 45 C.M.R. 928 (1972); *United States v. Wood,* 47 C.M.R. 957 (A.C.M.R.1973), *pet. denied,* 48 C.M.R. 1000 (1974); *United States v. Glidden,* 34 C.M.R. 577 (A.C.M.R.1964).

6. The Court believes that in view of the length of the two absences without leave of which the appellant was found guilty, he would have received a bad-conduct discharge regardless of whether the previous conviction for unauthorized absences was considered.