**UNITED STATES, Appellee,**

v.

**Raymond HOLSWORTH, Senior Airman,
United States Air Force, Appellant.**

No. 36,557.
ACM S24594.

U. S. Court of Military Appeals.

July 23, 1979.

For Appellant—*Captain Wade B. Morrison* (argued); *Colonel B. Ellis Phillips* (on brief).

For Appellee—*Captain James R. Van Orsdol* (argued); *Colonel Julius C. Ullerich, Jr.* (on brief).

Opinion of the Court

COOK, Judge:

The accused contends that two actions by the trial judge were prejudicial to him. First, he maintains that a ruling admitting certain evidence proffered by the Government was improper because the evidence was obtained in violation of an air base regulation; secondly, he contends that fatal

error was committed when the judge failed to instruct the court members that the offenses of which he was found guilty were not separate for the purpose of punishment. We decide both matters against the accused.

## I. *The Facts.*

A regulation of Hahn Air Base, Germany, provides for the random inspection of vehicles entering the base. It was promulgated to supplement Air Force Regulation 125–37, dated 21 December 1973, and USAF Europe Supplement 1, dated 19 November 1975, to that regulation.[1] In furtherance of the base regulation, a monthly schedule was prepared to prescribe the periods of time random vehicle searches would be enforced. The schedule for July indicated that vehicle searches for Friday, July 22, would be made from "0100–0300" hours; the period for Saturday, July 23, was "0200–0400" hours.

Captain Robert B. Soucy, USAF, the Acting Operations Officer, authenticated the July schedule. He testified that the time frames were "[m]ilitary time"; consequently, the stated period for random vehicle searches for July 22 related to the hours "immediately after 0000 [midnight] on the 21st," i. e., 1:00 a. m. to 3:00 a. m. on July 22. The stop of the vehicle in which the accused was a passenger was made at about 0150 hours on July 23. Staff Sergeant Ralph G. Becknell, Jr., USAF, the Law Enforcement Flight Chief of "B" Flight, testified that he had held the guard mount for the "midnight shift" of gate guards, which served from about 2245 hours (10:45 p. m.) on July 22, to 0730 hours, July 23. He stated that he had read the schedule to require the inspection procedure from 0100 to 0300 hours during the shift. In other words, he considered the schedule to refer to time after midnight, July 22, not time attributable to the 24-hour period of July 22. As a result, he instructed the guards of the midnight shift to conduct the inspection "required by the roster" from 0100 to 0300 hours, the early morning of July 23.

Senior Airman Alexander Vernon, USAF, was a guard on the midnight shift. He was present when the guards were briefed on the night of July 22 at about 2300 hours (11:00 p. m.). He testified the guards were instructed to conduct the gateway vehicle searches "[f]rom the hours of 0100 on the 23rd to 0300."

Vernon was assigned to a secondary gate. Traffic was "very slow." The first vehicle that came to the gate arrived about 0145. Vernon stopped it and asked the occupants to step out while he inspected it. The driver and two passengers, one of whom was the accused, complied.

Looking inside the car, Vernon saw a "greenish substance" on the passenger seat. On the basis of his "prior training and experience," Vernon believed the substance was hashish. Succeeding events led to a search of the accused, which yielded a film canister containing 4.93 grams of hashish, and the recovery of 230 grams of compressed hashish from an area on the other side of the base perimeter fence into which the accused had thrown a paper bag, after he had run from the situs of the stop to the fence.

## II. *The Effect of a Violation of the Regulation.*

At trial, the accused objected to the admission into evidence of testimony of the discovery of both quantities of hashish on the ground that the vehicle in which he was a passenger had been stopped in violation of the time schedule established for the month of July. The objection was overruled. The correctness of the ruling is challenged here; and, further, the accused maintains that the proper sanction for the violation of the regulation is exclusion of all evidence that was obtained during the events that immediately followed the allegedly illegal stop. In short, the accused posits a rule of exclusion for violation of the regulation equivalent to that for violation of the constitutional protection against unreasonable search and seizure. *See United States v. Robinson*, 6 M.J. 109 (C.M.A.1979); *United States v. Chase*, 1 M.J. 275 (C.M.A.1976).

---

1. Judicial notice was taken at trial of all the regulations.

■ Not every violation by a law enforcement officer of a government regulation relevant to an investigative encounter with an individual is "judicially enforceable" by the individual. *United States v. Samora*, 6 M.J. 360, 363 (C.M.A.1979) (Cook, J., concurring in the result). As the United States Supreme Court recently observed, in some circumstances "there is simply no reason why a court should exercise whatever discretion it may have to exclude evidence obtained in violation" of a government regulation. *United States v. Caceres*, 440 U.S. 741, 757, 99 S.Ct. 1465, 1474, 59 L.Ed.2d 733 (1979).

*Caceres* dealt with a regulation promulgated by the Internal Revenue Service to conform its practice to requirements established by the Attorney General of the United States in a memorandum to the heads of Executive departments and agencies. The IRS regulation required that, except on occasions of emergency, advance approval be obtained from the Department of Justice whenever an IRS agent desired to monitor a nontelephonic conversation with another. In three separate, face-to-face conversations with the defendant, an IRS agent transmitted the conversation to other agents by means of a radio transmitter concealed on his person. The agents receiving the conversations recorded them on tape. No prior approval for the monitoring of the conversations had been obtained from the Department of Justice and no emergency was shown to exist. At his trial for bribery, the defendant, the other conversant in the monitored conversations, objected to the admission into evidence of the tapes on the ground they had been obtained in violation of the IRS regulation. The Supreme Court held that the circumstances did not justify an exclusionary rule as a sanction for violation of the regulation.

In rejecting invocation of an exclusionary rule for violation of the IRS regulation, the Supreme Court pursued two lines of inquiry. The first was whether the regulation was "mandated by the Constitution or federal law." *Id.* at 1470. The Court determined that no constitutional provision or statute required prior approval by the Department of Justice for the electronic monitoring of a conversation with the consent of a conversing party. Here, no constitutional provision or statute forbids random inspections of motor vehicles seeking entry to American bases situated in foreign countries. *See United States v. Rivera*, 4 M.J. 215 (C.M.A.1978). Necessarily, no constitutional provision or statute prescribes a special time of day for random inspections. Thus, as in *Caceres*, the alleged violation of the base regulation raises no constitutional or statutory question. The second inquiry of the Supreme Court in *Caceres* was whether the provisions of the regulation established so important a safeguard to "the privacy of the citizenry" as to warrant a rule of exclusion as a sanction for violation of the regulation. 99 S.Ct. at 1473.

■ Appellate defense counsel have not suggested, and we are unable to imagine, how the occupant of a car stopped for inspection 10 minutes before the time prescribed has a greater expectation of privacy than the occupant of a car stopped precisely at the appointed moment, especially when, as here, there is no apparent, advance public notice of the inspection schedule. Good faith on the part of the law enforcement officer in the execution of his responsibilities may not alone, as appellate defense counsel observe, preclude invocation of an exclusionary rule when a constitutional right has been violated. *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 411, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Burger, C. J., dissenting). In *Caceres*, however, the Supreme Court held that "a reasonable, good-faith attempt to comply" with the provision of a government regulation that is not required by the Constitution or a statute does not justify the sanction of a strict exclusionary rule. 99 S.Ct. at 1474. We conclude, therefore, that the inadvertent, premature commencement of the random inspection procedure did not make illegal the stop of the accused's vehicle, and did not, therefore, becloud with illegality the events that led to discovery of the evidence admitted at trial.

III. *The Instructional Omission.*

The accused was found guilty of two offenses: Introduction onto the air base of 230 grams of hashish for "the purpose of transfer"; and wrongful possession of 4.93 grams of hashish. As trial was by a special court-martial, the maximum punishment that could be imposed was a bad-conduct discharge, confinement at hard labor for 6 months, partial forfeiture of pay, and reduction in grade,[2] although the Table of Maximum Punishments[3] prescribed a punishment for each offense extending to a dishonorable discharge and confinement at hard labor for 5 years.

■ In instructing the court members as to the maximum punishment, the trial judge simply enumerated the limits provided for a special court-martial. The record of trial compellingly indicates that neither he nor counsel considered that the offenses might not be separate for the purpose of punishment. If the offenses of which an accused is convicted are not separately punishable, the failure of the trial judge to so instruct the court members before they deliberate on the sentence is error. *United States v. Posnick*, 8 U.S.C.M.A. 201, 24 C.M.R. 11 (1957).

No hint of consideration of the possibility of nonseparability of punishment appears in the proceedings before the convening authority or the Court of Military Review, where the matter, if determined in the accused's favor, could have been purged of error by reassessment of the sentence. *See*

United States v. Bashaw, 6 M.J. 179 (C.M.A. 1979). The matter, however, is raised here and we are urged to hold, on the authority of *United States v. Smith*, 1 M.J. 260 (C.M. A.1976), that the offenses are not separately punishable and that the charges should be dismissed.

■ If error has been committed, it affects only the sentence; hence, dismissal of the charges is inappropriate. Looking at the sentence proceeding, we are impressed by the stress both parties placed on the offense of introducing onto the base 230 grams of hashish for the purpose of transfer. We are also impressed by the very substantial difference between the quantity of hashish involved in this offense and the 4.93 grams involved in the possession offense. These circumstances persuade us, beyond a reasonable doubt, that the possession offense did not influence the court members to adjudge a more severe sentence than they would have adjudged only for the introduction offense. Consequently, assuming, without deciding, that the offenses were not separately punishable, the absence of possible harm to the accused warrants affirmance of the decision of the United States Air Force Court of Military Review. *United States v. Searles*, 14 U.S.C.M.A. 643, 34 C.M.R. 423 (1964); *cf. United States v. Arsneault*, 6 M.J. 182 (C.M.A.1979).

Chief Judge FLETCHER and Judge PERRY concur.

---

2. Article 19, Uniform Code of Military Justice, 10 U.S.C. § 819.

3. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 127c, Table of Maximum Punishments at 25–15.