UNITED STATES, Appellee,

v.

Private E–2 Charles D. STARKS,
162–56–2487, United States
Army, Appellant.

ACMR 8601434.

U.S. Army Court of Military Review.

29 July 1987.

For Appellant: Captain Richard J. Anderson, JAGC (argued); Colonel Brooks B. La Grua, JAGC, Lieutenant Colonel Paul J. Luedtke, JAGC, Major Dale K. Marvin, JAGC (on brief).

For Appellee: Captain Patrick A. Hewitt, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Samuel J. Rob, JAGC, Captain Gary L. Hausken, JAGC (on brief).

Before ADAMKEWICZ, LYMBURNER and SMITH, Appellate Military Judges.

## OPINION OF THE COURT

### PER CURIAM:

Appellant was tried by a military judge sitting as a general court-martial on 16 December 1986. Pursuant to his pleas, he was convicted of obtaining counterfeit money and passing it with intent to defraud (Charge I, Specifications 1–4) and conspiracy to pass counterfeit money with intent to defraud (Charge II), in violation of Articles 134 and 81 of the Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 881 (1982) [hereinafter UCMJ or Code], respectively.

### I

On Fort Polk, Louisiana, the appellant entered into an agreement with Private Mark Ghiglieri to pass counterfeit money in the surrounding civilian community. Private Ghiglieri gave appellant the counterfeit money in the billets on post. Appellant then went into Alexandria, Louisiana, and "purchased" things of value in four different transactions, using the counterfeit bills. He received legitimate United States currency as change. Later appellant returned to Fort Polk and split the proceeds with Private Ghiglieri.

Appellant asserts that the court-martial improperly exercised jurisdiction over the offense of conspiracy to pass counterfeit money and the overt acts committed in furtherance of that conspiracy. Briefs were filed and oral argument held prior to the Supreme Court ruling in *Solorio v. United States*, — U.S. —, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987). This court, subsequent to the *Solorio* decision, requested supplemental briefs on the issue of the retroactivity of *Solorio*.

### II

We find that the court-martial could properly try all offenses that were referred to it. The U.S. Congress has provided that court-martial jurisdiction exists over all persons subject to the Code for any offense made punishable by the Code, under such limitations as the President may prescribe. *See* Articles 16–20, UCMJ, 10 U.S.C. §§ 816–820. In the Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial 203 provides that "to the extent permitted by the Constitution, courts-martial may try any offense under the Code and, in the case of general courts-martial, the law of war." Heretofore, the major constitutional limitation on the subject-matter jurisdiction of courts-martial was the requirement for "service-connection," established in *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and expanded upon in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971) and *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975). This service-connection analysis is no longer necessary. The Supreme Court has overruled *O'Callahan* in *Solorio*.

In *Solorio*, the issue was whether the jurisdiction of a court-martial to try a member of the Armed Forces depended upon the service-connection of the offense charged. The Court held that the jurisdiction of a court-martial depends upon the accused's status as a member of the Armed Forces, and not on the "service-connection" of the offense charged. *Id.* Applying *Solorio* retroactively, we find jurisdiction in the instant case.

The Supreme Court has often recognized that the retroactive application of its new rules is neither compelled nor prohibited by the Constitution of the United States. As a general rule, any change in the law occurring after a relevant event in a case will be given effect while that case is on direct review. *United States v. Parker*, 8 M.J. 584 (A.C.M.R.1979), *affirmed on other grounds*, 10 M.J. 415 (C.M.A. 1981). Appellate courts may limit application of decisions changing the law to a prospective effect only. "However, when the higher court has not limited the scope of its new rule to prospective cases only, it has been said that inferior courts must assume that the new rule applies in all

situations." *Id.* at 590–591. In *Griffith v. Kentucky,* the Supreme Court held that a new rule for the conduct of criminal prosecutions applies retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past. *Griffith v. Kentucky,* —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). We believe that this rule of retroactivity applies to the holding in *Solorio.*

 Appellant suggests that application of the *Solorio* test would be an improper *ex post facto* application of law. However, the *ex post facto* clause is based upon the principle that "persons have a right to fair warning of that conduct which will give rise to criminal penalties...." *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977). We find that no *ex post facto* violation occurred, in that there is no increase in the punishment of appellant, no change in the ingredients of the offenses of conspiracy or passing counterfeit money, and the ultimate facts necessary to establish guilt have not been changed. *See United States v. McDonagh,* 14 M.J. 415 (C.M.A.1983).

### III

 Further, even if *Solorio* is not given retroactive application, under the applicable principles of service-connection we still believe that there is sufficient service-connection in the offenses to sustain a military trial. When the actual passing of the counterfeit money occurred, the appellant was properly absent from the post. However, when the agreement to do so was made, the appellant was on post. Also, Private Ghiglieri had taken the counterfeit money that he gave to appellant from a locker in the billets on post. Therefore, clearly the act of conspiracy (Charge II) was committed on post. With regard to the passing of counterfeit money off-post (Charge I), appellant contends that these offenses impacted on military discipline and effectiveness only to the extent that the commission of any offense does. We believe otherwise; commission of these offenses affects troop morale and the reputation and integrity of the post. Every soldier stationed at Fort Polk and conducting business in the surrounding civilian community has been harmed by appellant's actions. *See United States v. Lockwood,* 15 M.J. 1, 9–10 (C.M. A.1983). Also, soldiers should not view the military enclave as a sanctuary in which they may evade prosecution. If a soldier believes that he can only be tried by a civilian court and not be subject to court-martial penalties, the commander's ability to maintain order will be decreased.

Accordingly, the findings of guilty and the sentence as approved by the convening authority are affirmed.