**UNITED STATES, Appellee,**

v.

**Staff Sergeant Patrick J. TIMONEY, 542–74–3023, United States Army, Appellant.**

**ACMR 9101215.**

U.S. Army Court of Military Review.

28 May 1992.

For Appellant: Dan R. Hyatt (argued); Captain Teresa L. Norris, JAGC; Captain Michael P. Moran, JAGC (on brief).

For Appellee: Captain Robert J. Walters, JAGC (argued); Colonel Dayton M. Cramer, JAGC; Lieutenant Colonel Daniel J. Dell'Orto, JAGC; Major Joseph C. Swetnam, JAGC (on brief).

Before De GIULIO, HAESSIG, and ARKOW, Appellate Military Judges.

OPINION OF THE COURT

ARKOW, Judge:

Appellant was tried by a special court-martial composed of officer and enlisted members. Contrary to his plea he was convicted of the wrongful use of cocaine in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (1982 and Supp. V 1982) [hereinafter UCMJ]. The court-martial sentenced appellant to a bad-conduct discharge and reduction to Private E1. The convening authority approved the adjudged sentence.

The evidence supporting appellant's conviction was appellant's positive urinalysis test which showed the presence of benzoylecgonine, a metabolite of cocaine formed after the ingestion of cocaine. Appellant contends in this appeal that his conviction is both legally and factually insufficient because the procedures employed in obtaining and processing his urine sample were so flawed that the test results should not have been received in evidence by the military judge; and, even if they were properly received, the flawed testing procedures raised more than a reasonable doubt as to the appellant's guilt. We disagree.

The standard operating procedures that are prescribed for commander-directed urinalysis tests are set forth in Appendix E, Army Regulation 600–85, Alcohol and Drug Abuse Prevention and Control Program (21 October 1988) [hereinafter AR 600–85]. These are internal procedures, designed to ensure the integrity of the testing program.

Appellant notes seven deficiencies in the tests given to twelve soldiers in his detachment on 17 December 1990. They are:

(1) the specimen bottles were not labeled until after the specimen was provided, contrary to paragraphs E–2 and E–5, AR 600–85; [1]

(2) the observer did not actually observe appellant urinate, contrary to paragraph E–6, AR 600–85; [2]

(3) participants in the urinalysis did not sign a ledger, contrary to paragraphs E–4 and E–5, AR 600–85; [3]

(4) three participants could not fill their sample bottles on their first attempt, and their partially-filled bottles were left on a table until the participants were able to complete filling their bottles at a later time; [4]

(5) there was inadequate key control to the overnight storage facility;

(6) no return receipt was received from the testing laboratory; and

(7) two samples were voided by the laboratory because portions of the social security numbers on the labels were not legible.[5]

These deficiencies were not disputed at trial. Their significance was disputed. The government evidence showed that there were only twelve individuals being tested. Each was tested individually to avoid confusion. The procedures followed required each individual to produce his identification card and transfer his social security account number to a specimen label, a chain of custody and report record form, and a unit testing ledger. This information was verified by the soldier being tested, the test administrator, and the sol-

1. Paragraph E–2 provides:

E–2. UADC [Unit Alcohol and Drug Coordinator] receives urine specimen bottles and labels them as follows:

a. Attaches gum label on body of bottle.

b. Records the following on the label: (See fig E–1, sample completed label.)

(1) Julian date.

(2) Specimen number....

(3) Individual's social security number.

Paragraph E–5 provides:

E–5. UADC distributes urine specimen bottles to the soldier in the presence of the observer. The UADC directs the soldier to verify the information on the label by signing his or her payroll signature in the urinalysis ledger and initialing the gum label. The observer will also verify the information on the label and sign the urinalysis ledger.

2. Paragraph E–6 provides:

E–6. Observer (E–5 or above, same sex) has the duty to ensure that the specimens provided are not contaminated or altered in any way. The observer directly observes the soldier urinating into specimen bottle and placing the cap on the bottle.... Observer will take custody of the bottle from soldiers directly observed and retain custody until the bottles are turned over to UADC. Observer also ensures that bottles are not reopened while bottles are in the custody of the soldier or the observer....

3. Paragraph E–4 provides:

E–4. UADC maintains a urinalysis ledger documenting all individuals submitting test samples with the following information:

a. Julian date.

b. Specimen number.

c. Individual's social security number.

d. Name of observer....

See paragraph E–5 at note 1, *supra.*

4. This deficiency did not involve appellant's sample.

5. Neither of these samples was appellant's.

dier observing the test. The observer gave appellant an unlabeled empty bottle and stood some four to five feet to the left-rear of appellant, who was standing by himself at a urinal. While he did not see appellant urinate into the bottle, he heard the urine fill the bottle and received a full bottle back from appellant.[6] The bottle was then returned to the test administrator, the paperwork was reviewed, the label was initialed by appellant, the observer, and the test administrator and was affixed to the bottle. Thereafter, the bottle was securely sealed with tape and was ultimately sent to the laboratory and found to be positive for the metabolite of cocaine.

In addition to the sample collection, the government presented evidence establishing the chain of custody and the laboratory procedures, and the test results. The documentation was received in evidence without objection from the defense.

During an out-of-court hearing to discuss instructions the military judge succinctly framed the issue in the case. He concluded that the issue was whether appellant's sample was tested. He also concluded that the factfinders would decide whether the failure to strictly comply with the testing procedures in AR 600–85 detracted from the evidence that it was appellant's sample. He ultimately instructed the members on the issue and advised them that they had to be convinced beyond a reasonable doubt that appellant wrongfully used cocaine.

■■■ Although not claimed at trial, appellant now claims that the proper sanction for the government's failure to follow its own procedures requires the exclusion of all evidence obtained as a result of the commander-directed urinalysis. We disagree. Not every violation of a regulation by the government affords an accused the judicial remedy of evidentiary exclusion.

United States v. Holsworth, 7 M.J. 184 (C.M.A.1979). In United States v. Caceres, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), the Supreme Court posited a two-part inquiry to determine whether the violation of a regulation requires the exclusion of evidence. First, it should be determined whether the regulation was mandated by the Constitution or federal law. Second, do the provisions of the regulation establish so important a safeguard to the "privacy of the citizenry" as to warrant exclusion. We note there are no constitutional or statutory restrictions which forbid mandatory urinalysis testing in the military. See generally National Treasury Employees Union v. Von Raab, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989); United States v. Bickel, 30 M.J. 277 (C.M.A.1990). Nor are there any statutorily mandated procedures that have been violated in this case. Of course, mandatory urinalysis programs are permissible when, as in the military, the persons to be tested are located in a highly regulated environment where they have a reduced expectation of privacy. Bickel, 30 M.J. at 285.

Applying the standard of Caceres, the Court of Military Appeals in United States v. Pollard, 27 M.J. 376 (C.M.A.1989), established guidelines for excluding evidence of urinalysis test results based on a failure to follow regulatory procedures. It concluded that failure to follow regulatory testing procedures "does not render the sample inadmissible as a matter of law; however, such deviation may be considered along with all other factors in determining if the evidence lacks sufficient reliability to be considered by the trier of fact." Id. at 377.[7] The military judge must decide on admissibility of the evidence under Manual for Courts–Martial, United States, 1984, Military Rule of Evidence 313(b) (inspec-

---

6. This was "accomplished in a manner and under circumstances conducive to the preservation of human dignity as much as possible" as required by paragraph 10–5c, AR 600–85.

7. Cf. United States v. Arguello, 29 M.J. 198 (C.M.A.1989) (Department of Defense Directive 1010.1, Drug Abuse Testing Program (Dec. 28, 1984) which required laboratories to report as negative specimens which fail to reach the re-

quired level for a positive determination was designed to protect individuals; violation of which was held to be an "egregious denial of due process."). See also United States v. Konieczka, 31 M.J. 289 (C.M.A.1990) (intentional violation of a regulation by further testing of urine sample which otherwise would have been discarded because of failure to reach cutoff level was improper.).

tions), which only requires that the test be administered in a reasonable fashion. *Id.*

Here, the military judge made such a determination, admitted the evidence without objection, and presented the issue to the court members for determination. His ruling is fairly supported by the record, is not clearly erroneous, and should not be disturbed.[8] *See United States v. Strozier,* 31 M.J. 283 (C.M.A.1990) (military judge's ruling on admissibility of test results should not be disturbed). Accordingly, the evidence is legally sufficient to support appellant's conviction. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).[9]

Concerning the allegation of factual insufficiency, we find beyond a reasonable doubt that appellant wrongfully used cocaine sometime between 14 and 17 December 1990. *See* UCMJ art. 66(c), 10 U.S.C. § 866(c); *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). In arriving at our conclusion, we are convinced beyond a reasonable doubt that it was appellant's urine specimen and that it was tested without adulteration by any intervening cause or agent.

The findings of guilty and the sentence are affirmed.

---

8. Implicit in the military judge's ruling was that he did not find there was a substantial violation of those provisions of the regulation intended to assure reliability of the testing procedures as they applied to appellant's individual test. *See Pollard,* 27 M.J. at 377.

9. As we find the military judge properly admitted the evidence we need not consider whether trial defense counsel's failure to object constitutes waiver.